(156 App. Div. 490.)

### CITY OF NEW YORK v. MATTHEWS et al.

(Supreme Court, Appellate Division, First Department. May 2, 1913.)

1. TRIAL (§ 4*)—LEGAL AND EQUITABLE ISSUES—SEPARATE TRIAL.

A defendant in an action at law, who sets up in his answer facts both as a defense and as a basis of an equitable counterclaim on which affirmative relief is demanded, should, in advance of the trial, apply to the court to have the equitable issue first tried at Special Term.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 8–10; Dec. Dig. § 4.*]

2. TRIAL (§ 4*)—LEGAL AND EQUITABLE ISSUES—SEPARATE TRIAL.

A defendant, in an action at law on a contract binding him to make specified payments annually for a privilege granted him by a city, who alleges in his answer a mutual mistake of fact of the parties in making the contract, and who sets up a general denial, should in advance of the trial apply to the court to have the equitable issue involving the reformation of the contract first tried at Special Term, and the court not reforming the contract may not render judgment as though it had been reformed.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 8–10; Dec. Dig. § 4.*]

3. REFORMATION OF INSTRUMENTS (§ 17*)—GROUNDS—MISTAKE—EVIDENCE.

An owner of buildings on opposite sides of a street applied to city officers for permission to construct an underground tunnel to connect the buildings. An assistant engineer advised the granting of the permission on condition of the owner making specified payments annually. The officers imposed the conditions and the owner contracted to make the payments. The assistant engineer did not know that the owner owned any part of the street, and the representative of owner knew nothing about the method by which the city determined the amount to be paid. Held, that the contract was not the result of a mutual mistake of fact as to the ownership of the street, but the minds of the parties met on the subject as to the amount which should be paid for the privilege, and the owner was not entitled to a reformation of the contract by a reduction of the sums to be paid, based on his ownership of a part of the street.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 69–71; Dec. Dig. § 17.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. REFORMATION OF INSTRUMENTS (§ 45*)—GROUNDS—MISTAKE—EVIDENCE.
   Where an agreement is sought to be reformed by reason of a mutual mistake of fact, the party asserting it must support it by clear and convincing proof.
   [Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 157–193; Dec. Dig. § 45.*]

Appeal from Trial Term, New York County.

Action by the City of New York against James Matthews and another. From a judgment granting insufficient relief, and from an order denying a new trial, plaintiff appeals. Reversed, with directions.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Terence Farley, of New York City, for appellant.
Edward M. Grout, of New York City, for respondents.

McLAUGHLIN, J.  The defendants were the owners of two buildings situate on opposite sides of Livingston street in the borough of Brooklyn, and, being desirous of connecting the same, applied to the Board of Estimate and Apportionment of the City of New York for permission to construct and thereafter maintain a tunnel beneath the street.  The board entertained the application and thereafter passed a resolution giving its consent, upon certain conditions, subject to revocation, for a period of 25 years.  Among the conditions imposed were that the defendants should pay to the city, for the privilege, $800 per year for the first five years, and an increased sum for each succeeding five years; and in addition that they should execute and file with the comptroller of the city a written agreement to make such payments at the time and in the manner provided, and deposit $1,500 as security for performance.  The resolution was approved by the mayor, and on the 16th of May, 1906, the agreement was filed and the security deposited.  The tunnel was thereafter constructed and has since been maintained by the defendants.  They, however, have refused to make the payments provided, except $400, covering a period from May 2 to November 1, 1906, and this action is brought upon the agreement, to recover $2,400, the amount due for the three ensuing years.

The answer set up a general denial and for a "partial defense and by way of counterclaim" alleged that the agreement was made under a mutual mistake of fact, in that both parties, at the time it was executed, supposed that the fee of that portion of the street through which the tunnel was constructed belonged to the city, whereas only 15 out of 50 feet was owned by it, the remaining 35 feet being owned by the defendants; that the amount stipulated to be paid to the city as compensation for the privilege was fixed in accordance with what both of the parties understood was the area of the city's property which would be occupied by the tunnel; and that had they been aware of defendants' ownership of 35 feet of the length of the tunnel the amount fixed would have been proportionately less.  The judgment demanded was a dismissal of the complaint and that the agreement

be reformed by reducing the amount payable to the city proportionate to the part of the tunnel actually owned by it, and that defendants recover $280, being that portion of the $400 already paid which was in excess of the amount which would have been due had the contract expressed the intention of the parties; and that an injunction issue restraining the city from applying any portion of the $1,500 in extinguishment of the payments provided in the original contract. A reply put in issue the allegations of the counterclaim.

The action came on for trial at a Trial Term, and the parties then stipulated that it be tried before the court and one juror and that each side, at the conclusion of the trial, would move for the direction of a verdict. Defendants did not then, nor had they at any time after issue had been joined, ask that the equitable issues raised by the counterclaim and reply be sent to the equitable side of the court for trial. At the close of the case both sides moved for the direction of a verdict. Thereupon a verdict was directed in favor of the plaintiff for $835.20, or about one-third of the amount to which it was entitled if the agreement above referred to were enforced. Judgment was entered against the defendants for that amount, with costs, from which the plaintiff appeals.

[1] It may not be out of place to call attention to the fact that the practice adopted is not sustained by any of the authorities cited. In an action at law, as this one was, where the answer sets up facts both as a defense and as the basis of an equitable counterclaim, upon which affirmative relief is demanded, the defendant, in advance of the trial, should apply to the court to have the equitable issue first tried at Special Term. Goss v. Goss & Co., 126 App. Div. 748, 111 N. Y. Supp. 115; Brody, Adler & Koch v. Hochstadter, 150 App. Div. 527, 135 N. Y. Supp. 550; Rubenstein v. Radt, 133 App. Div. 57, 117 N. Y. Supp. 893.

[2] Here, the defendant went to trial on the law side of the court without making any application to have the equitable issues tried at Special Term and was permitted to introduce evidence, against the plaintiff's objection, to support such issues, and, at the conclusion of the trial, asked that judgment be given for the equitable relief demanded in the answer. The court did not reform the contract, but evidently proceeding upon the theory that there had been a mutual mistake and for that reason it should be treated as though it had been reformed, directed a verdict for about one-third of the plaintiff's claim.

Pleadings and the rules of practice for disposing of issues raised in them would serve little purpose if a judgment obtained in this way were permitted to stand. The course pursued is sought to be justified by Bennett v. Edison Electric Ill. Co., 164 N. Y. 131, 58 N. E. 7. That case, as I read the opinion, does not sanction the practice here adopted, nor does it in any way sustain the respondents' contention. There, an action was brought to recover the contract price for digging two wells. The work was done under a contract which provided that the defendant would pay to the plaintiff $10 per 1,000 gallons of water per day of 24 hours upon completion of the wells. The answer

interposed alleged for a defense and by way of counterclaim that the agreement was to pay $1 per 1,000 gallons of water furnished instead of $10 as stated in the contract, and that the signing of the contract by the defendant's superintendent was procured through false representations made with reference to the contents of the instrument, and with intent on the part of the plaintiff to defraud the defendant. The answer demanded the reformation of the contract by the insertion thereon of $1 instead of $10. When the case was moved for trial defendant asked that the equitable issues raised be first tried by the court. This was denied and an exception taken, and whether or not the exception were good was the question presented on the appeal. In disposing of it, the court said:

"We do not at this time deem it necessary to determine whether the matter alleged in the answer constitutes an equitable counterclaim, for, assuming it to be a counterclaim, the matter alleged also constitutes a defense and relieves the defendant as fully as the allowance of the counterclaim. If the signature of the defendant to the contract was procured through fraud, it was not the defendant's contract, and that defense was open and available to the defendant in any action at law brought upon the contract."

Here, fraud was not alleged in the answer, proved upon the trial, or claimed upon the argument of the appeal. Defendants' relief was based entirely upon the assertion that both parties, at the time the agreement was executed, labored under a mistake of fact, and for that reason it did not express their intention. But assuming that to be so, the defendant, until the contract had been reformed so as to express the intention, was not in a position to obtain the relief here given. So long as the agreement remains in force defendants are under an obligation to make the payments therein provided.

[3, 4] Upon the merits the defendants did not establish that the agreement was the result of a mutual mistake of the parties. A finding to that effect would be against the evidence. In this connection it appeared that the defendants authorized the contractor who was to construct the tunnel to obtain the necessary permit from the city. He drafted the application for permission to construct and maintain the tunnel, which was signed by one of the defendants. It was thereafter submitted to the Board of Estimate and Apportionment, which, in turn, referred it to the Bureau of Franchises for investigation. An assistant engineer of that department made a report in which he advised the board to grant the permission upon certain conditions, among which were the annual payments above stated. The board, acting upon this report, imposed the conditions suggested, and in the contract sued on defendants agreed, in general terms, to comply with them. It is suggested by counsel for the respondents that the city fixed the amount to be paid in accordance with what the board supposed was the area or space of the city's property occupied by the tunnel; that is, that the whole space to be occupied belonged to the city instead of about one-fifth of it.

There is no evidence whatever as to what took place at the meeting of the Board of Estimate and Apportionment when the resolution was passed. The assistant engineer in the Bureau of Franchises,

whose report the board followed, testified that he had no recollection of this particular case, but it had been his custom in determining the amount of annual compensation to consider the superficial area of the tunnel. There does not, however, seem to have been any accurate method by which he fixed the sum to be paid. While from all the evidence it may fairly be inferred that he did not know of defendants' ownership of any part of the space, any finding that he, or the Board of Estimate and Apportionment, would have fixed a different amount had they known of that fact, would be pure speculation. Where an agreement is sought to be reformed by reason of a mutual mistake, the party asserting the claim must support it by proof which is clear and convincing, or, as is sometimes said, "by proof of the most substantial and convincing character." Christopher St. Ry. Co. v. Twenty-Third St. Ry. Co., 149 N. Y. 51, 43 N. E. 538; Albro v. Gowland, 98 App. Div. 474, 90 N. Y. Supp. 796; Jamaica Savings Bank v. Taylor, 72 App. Div. 567, 76 N. Y. Supp. 790. Defendants' application for permission to construct and maintain the tunnel provided that:

"The compensation for the privilege to be such amount as may be determined as an equivalent thereof by the Board of Estimate and Apportionment."

The contractor who represented defendants in obtaining the permission testified that he knew nothing about the method by which the city determined the amount to be paid, nor was any suggestion made to him by the board in reference thereto. The situation, therefore, was this: The defendants applied for the permission and left it to the city to determine, by any method it saw fit, the amount to be charged. The city, by the resolution, granted the privilege conditioned upon the payment of certain amounts. Defendants, by the contract sued on, accepted the conditions and promised to pay the amounts therein specified. It is therefore, as it seems to me, entirely immaterial whether the board fixed a higher sum than it otherwise would had it known of the defendants' ownership. The sum which it did fix for the privilege of constructing and maintaining the tunnel, defendants agreed to pay. The minds of the parties met upon that subject. This being so, there was no basis for reforming the contract. The proof failed to establish a mutual mistake (Curtis v. Albee, 167 N. Y. 360, 60 N. E. 660; Nevius v. Dunlap, 33 N. Y. 676), and the court should have directed a verdict in favor of the plaintiff for the full amount claimed.

The judgment and order appealed from, therefore, are reversed, and, there being no dispute as to the facts upon which defendants' liability depends, a verdict is directed in favor of the plaintiff for $2,400, with interest as prayed for in the complaint, together with the costs in this court and in the court below. All concur.