WENDELL J. CURTIS, as Assignee for the Benefit of Creditors of SIDNEY B. ROBY, Respondent, *v.* HENRY C. ALBEE, Appellant.

1. EQUITY — IGNORANCE NOT A BASIS FOR REFORMATION OF CONTRACT — ASSIGNMENT FOR WHOLE AMOUNT OF PARTIALLY PAID ACCOUNT. Mere ignorance as to the prior payment to an attorney of part of an account is not ground for a judgment reforming a written assignment thereof by reducing to a smaller amount the account described therein without reservation or qualification as a claim upon which the whole amount is unpaid, where no fraud exists and the instrument expresses the precise agreement of the parties without the insertion or omission of any provision contrary to their intention, since in the absence of fraud on one side and mistake on the other, reformation is never based upon ignorance, but upon what the parties agree to, and then, by the mistake of both, failed to express in the writing.

2. ASSIGNOR CANNOT RECOVER FROM ASSIGNEE AMOUNT COLLECTED BY ATTORNEY AND PAID TO ASSIGNEE. The assignor cannot recover the amount paid to his attorney from the assignee, who, although it did not pass by the assignment and he was not authorized to do so, has collected it in his own name and in his own behalf from the attorney, where the payment is not in *specie* so that the *res* can be followed, since under such circumstances, he does not represent the assignor and the latter cannot adopt or ratify the payment.

*Curtis* v. *Albee*, 47 App. Div. 634, reversed.

(Argued April 19, 1901; decided June 4, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 1, 1900, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to so reform an assignment of a chose in action as to state that the amount of the claim assigned was $1,191.28, instead of $2,036.54, as stated in the written instrument, and for other relief. The facts, as found by the trial court, were substantially as follows : On the 12th of December, 1896, Sidney B. Roby, then of the city of Rochester, made a general assignment to the plaintiff for the benefit of his creditors. Prior to said date the firm of Hoff-

man & Company, of Albion, Indiana, being indebted to said Roby in a sum exceeding $2,200, had made a general assignment to one Eagles in trust for the benefit of their creditors.

Before making an assignment, Mr. Roby had employed Mr. Welker, an attorney of Albion, to collect said claim, and in May, 1897, the plaintiff also employed said Welker for the same purpose. Subsequently Mr. Eagles, as assignee, paid to said Welker as attorney for the plaintiff, upon said claim against Hoffman & Company, the sum of $167, on June 23rd, 1897; $238.50, on July 2nd, 1897; $357, on Sept. 13th, 1897, and $321.26 on May 4th, 1898, amounting in all to $1,083.76. In August, 1897, Welker paid the plaintiff said sum of $238.50 collected by him on the second of July, but he failed to pay over any more, or even to give notice that he had made any further collections.

On the 25th of June, 1898, pursuant to an order of the County Court, the plaintiff sold at public auction said claim against Hoffman & Company with a large number of other accounts which he had been unable to collect. Prior to the sale and in order to get bids, the plaintiff represented to the defendant and others that the claim against said Hoffman & Company, so offered for sale, was " a claim for an unpaid balance of $2,036.54." At the sale the defendant was the highest bidder and purchased said claim with others for the sum of $6.50, upon the payment of which the plaintiff delivered to him a written assignment thereof, describing it as a claim against Hoffman & Company of Albion, Indiana, for $2,036.54 without reservation or qualification. At this time neither the plaintiff nor the defendant knew that any payment had been made upon this claim other than the said sum of $238.50, and both believed that the balance due from Hoffman & Company on said account was the amount stated in the assignment to the defendant. Subsequently the defendant, by using diligence, discovered the facts and induced Welker to pay over to him the sum of $610.60 " as and for the payments made upon the said account of the assignee of Hoffman & Company to said Welker on Sept. 13th, 1897, of

$357, and on May 4th, 1898, of $321.26," less his fees and expenses. Welker still retained in his hands the sum of $167, received by him on June 23rd, 1897, and refused to pay it either to the plaintiff or defendant until their rights were judicially determined.

From these facts the trial court found as conclusions of law that the moneys paid to Welker were effectual payments against Hoffman & Company and reduced the claim accordingly, and that the moneys collected by Welker belonged to the plaintiff and not to the defendant; " that by the excusable mistake of the parties hereto the said account against Hoffman & Company was described at said sale on June 25th, 1898, and in the assignment thereof made in pursuance of said sale, as amounting to $2,036.54 instead of $1,191.28, which was the true amount thereof, and that the plaintiff is entitled to have the said assignment reformed and corrected accordingly so as to describe said claim as amounting to $1,191.28;" and finally that "the plaintiff is entitled to recover of the defendant that part of the said fund which has been paid to him, namely, $610.60, with interest from July 22, 1898, and that the defendant is not entitled to recover or receive from the said Welker $167, still remaining in his hands." The judgment entered accordingly was unanimously affirmed by the Appellate Division without an opinion, and the defendant comes here.

*George H. Harris* for appellant. The plaintiff is not entitled to a reformation of the contract. (*Nevius* v. *Dunlap*, 33 N. Y. 676; *Botsford* v. *McLean*, 45 Barb. 481; *Smith* v. *Mackin*, 4 Lans. 45.) The defendant committed no act which in any way prejudiced any of the rights or remedies of the plaintiff. (*Patrick* v. *Metcalf*, 37 N. Y. 332; *Butterworth* v. *Gould*, 41 N. Y. 450; *Rowe* v. *Bank of Auburn*, 51 N. Y. 674; *Decker* v. *Saltzman*, 59 N. Y. 275; *Peckham* v. *Van Wagenen*, 83 N. Y. 40.) The title to the moneys collected passed by the assignment. (*Cram* v. *Union Bank*, 1 Abb. Ct. App. Dec. 461; *Hawkins* v. *Jackson*, 2 McN. & G.

372 ; *Canty* v. *Lattermer*, 31 Minn. 239 ; *Oneida Bank* v. *Ontario Bank*, 21 N. Y. 490 ; *Tracy* v. *Talmage*, 14 N. Y. 192 ; *Jackson* v. *Blodget*, 5 Cow. 203 ; *Puttison* v. *Hall*, 9 Cow. 747 ; *Langdon* v. *Buel*, 9 Wend. 80.)

*Nathaniel Foote* for respondent. The judgment appealed from, so far as it directed a reformation and correction of the bill of sale, is correct, and the plaintiff is entitled to such relief from the facts proved. (*Gallup* v. *Bernd*, 132 N. Y. 370 ; *Butler* v. *Clark*, 29 Abb. [N. C.] 413 ; 1 Beach's Mod. Eq. Juris. § 50.) The plaintiff has a right to recover from defendant the moneys paid over to defendant by Welker. (1 Am. & Eng. Ency. of Law [2d ed.], 1172–1178 ; *Roca* v. *Byrne*, 145 N. Y. 182 ; *Æ. Ins. Co.* v. *Mayor, etc.*, 153 N. Y. 331 ; *Le Marchant* v. *Moore*, 150 N. Y. 209 ; *Gerard* v. *McCormick*, 130 N. Y. 261 ; *Baker* v. *N. Y. Nat. Exch. Bank*, 100 N. Y. 31 ; *Van Alen* v. *Am. Nat. Bank*, 52 N. Y. 1 ; *Wetmore* v. *Porter*, 92 N. Y. 76 ; *English* v. *McIntyre*, 29 App. Div. 439 ; *Holmes* v. *Gilman*, 138 N. Y. 369.)

VANN, J. At the time of the sale by auction the plaintiff owned a claim against Hoffman & Company for only $1,191.28, yet by his representation that it amounted to $2,036.54 he induced the defendant to purchase it as a demand for that amount, and gave him a written assignment describing it as a claim upon which that amount was unpaid. He has procured a judgment reforming the assignment by reducing to the smaller sum named a claim which, as he represented, was for the larger sum and which he so described in a written instrument that was the only legal evidence of the transaction between the parties. This has been done upon the theory that a court of equity has power to decree a reformation because a fact existed which was unknown to both parties when they made the contract. That fact was the collection upon the claim against Hoffman & Company of the sum of $845.26 by Welker, who was the attorney for the plaintiff, and whose action in making the collection bound the

plaintiff, but with whom the defendant, at the time he bought the claim, had had no connection.

There was nothing omitted from the contract by mistake or contrary to the intention of the parties. It was written in the precise form intended by both and expressed their entire agreement. Nothing was put in the assignment and nothing was left out, except as both parties intended and desired at the time the contract was made. There was no mutual mistake, or mistake on one side and fraud on the other, which led to the insertion or omission of some provision contrary to the real intention. The minds of the parties met upon everything which is in the assignment and upon nothing which is not in the assignment, and, under such circumstances, any change made by the court was not reforming the contract but making a new one.

An action to reform a written agreement rests upon the theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake, or through mistake on one side and fraud on the other, omitted some provision agreed upon, or inserted one not agreed upon. The object of such an action is to so change the instrument, as written, as to conform it to the agreement, as made, by inserting the provision omitted, or striking out the one inserted by mutual mistake. In the absence of fraud nothing can be put in or taken out by the court, unless it was the intention of both parties that it should go in or be left out when the agreement was written. The sole office of such an action "is to correct mistakes by writing out the contract according to the actual agreement." (*Thomas* v. *Harmon*, 122 N. Y. 84, 89.) Equity will not make a new agreement for the parties, nor, under color of reforming one made by them, add a provision which they never agreed upon and did not want when the contract was written, " although it may afterward appear very expedient or proper that it should have been incorporated." When the writing expresses the actual agreement it cannot be reformed and a stipulation, not assented to, can never be added. (*Nevius* v. *Dunlap*, 33 N. Y. 676; *Bryce* v. *Lorillard Fire*

*Ins. Co.*, 55 N. Y. 240, 242; *Paine* v. *Jones*, 75 N. Y. 593; *Born* v. *Schrenkeisen*, 110 N. Y. 55; *Albany City Savings Institution* v. *Burdick*, 87 N. Y. 40; *Paine* v. *Upton*, 87 N. Y. 327; *Pitcher* v. *Hennessey*, 48 N. Y. 415; *Many* v. *Beekman Iron Co.*, 9 Paige, 188, 195; *Snell* v. *Ins. Co.*, 98 U. S. 85; Story's Equity Jur. § 468; Pomeroy's Eq. Jur. §§ 855, 870, 1376.) The remedy of reformation for mistake should not be confounded with that of rescission for fraud. No fraud is claimed in this action, and the mere fact that an instrument " ought not to be enforced is insufficient, standing alone, to justify a resort to equity." (Beach on Eq. Jur. §§ 540, 552.) " Mistake," said Mr. Pollock, " does not of itself affect the validity of contracts at all. But mistake may be such as to prevent any real agreement from being formed, in which case the agreement is void; or mistake may occur in the expression of a real agreement, in which case, subject to rules of evidence, the mistake can be rectified." (Pollock on Contracts, 392.) " A mistake on one side may be a ground for rescinding a contract, or for refusing to enforce its specific provisions, but it cannot be a ground for altering its terms." (Adams Equity, 171.)

Upon applying these principles to the case in hand, it is obvious that the learned trial judge proceeded to judgment upon an erroneous assumption. He was under the impression that because both parties were ignorant of the collection by Welker, there was a mutual mistake which would justify a reformation of the contract. In the absence of fraud on one side and mistake on the other, reformation is never based upon ignorance, although rescission may be, but upon what the parties agreed to and then, by the mistake of both, failed to express in the writing. A mere mistake is not enough to support such an action, as it must not only be mutual, but special, for it must relate to something agreed upon but not written out as agreed upon. In the case before us both parties assented to the same thing, the one to sell and the other to buy a claim for $2,036.54, and the assignment expresses precisely that and nothing else. Neither agreed to buy or

sell a claim for $1,191.28, and there was no mistake on the part of either in not thus describing the thing sold. A claim for the smaller amount was not in the mind of either party, for neither supposed it to exist, and hence their minds could not have met on the transfer of such a claim. What the parties did not agree to cannot be added by the court. The defendant paid a small sum for a doubtful claim, large in amount, and ran the risk of losing what he paid for the chance of realizing a great profit. He is entitled to the contract in the form in which it was made without interference by the court in the guise of reformation. The plaintiff got what he agreed to take and assigned what he agreed to assign, and he has no more right to a reformation of the contract than he would have to strike out a warranty of soundness from a bill of sale of a horse, because he and the purchaser both believed the horse to be sound when in fact it was unsound. He sold the claim in question with a warranty that it was for a certain amount, and he cannot get rid of the warranty by " reforming " it out of the contract upon the ground that he sold something he did not have, although he supposed he had it. This would ignore the rights of the defendant and impose upon him a contract that he never made.

The plaintiff was not entitled to recover from the defendant the amount collected by the latter from the attorney in Indiana. The money in Welker's hands did not belong to the defendant, for it did not pass by the assignment of the claim sold at auction. The plaintiff then had two claims, one against Welker and the other against Hoffman & Company. He did not sell the former to the defendant, nor authorize him to collect it. The payment by Welker did not bind the plaintiff, who is still entitled to recover from him the same as if he had made no payment to the defendant. The defendant was not the trustee or agent of the plaintiff, and had no money of the plaintiff in his hands. The payment to the defendant was not to the plaintiff's use. The defendant did not make the collection in the name or on behalf of the plaintiff, but in his own name and on his own

behalf. The identical money received by Welker from the assignee of Hoffman & Company was not paid to the defendant, but an equivalent amount. The plaintiff could not adopt or ratify the payment and pursue the defendant because he neither represented nor assumed to represent the plaintiff, and the payment was not *in specie* so that the *res* could be followed. Welker is still indebted to the plaintiff and the defendant is apparently indebted to Welker, but he owes the plaintiff nothing and the recovery against him cannot be sustained.

Neither the decree for reformation nor the judgment for money was warranted by the facts found or by any view of the evidence. The judgment appealed from must, therefore, be reversed and a new trial granted, with costs to abide the event.

LANDON, J. (dissenting). I dissent. Welker was the attorney of the plaintiff to collect the account which he held against the assignee of Hoffman & Company, and he had collected thereon for the plaintiff $745.26, which yet remained in his hands at the time the plaintiff sold the account to the defendant, but the plaintiff did not know it. In selling the account the plaintiff did not sell the money in Welker's hands. It was the plaintiff's money. Welker had received it in a fiduciary capacity and, therefore, whether he paid the identical or substituted money to the defendant is immaterial. It was his duty to pay one or the other kind of money to the plaintiff, and when he paid $600 of it to the defendant, the defendant knew the facts. He demanded of Welker the money which Welker had collected upon the account of plaintiff's assignor against the assignee of Hoffman & Company, and Welker paid him that money, and whether in identical or substituted currency, he got what he asked for, and cannot be heard to quibble over the identity of the particular cash. The plaintiff could trace and follow the money, whichever kind it was, into the defendant's hands, and, having found it there, could reclaim it. (*Van Alen* v. *American National Bank*, 52 N. Y. 1.) The plaintiff need not ratify the payment to the

defendant; he sought and found his money where his attorney had misplaced it. The judgment in his favor against the defendant for the recovery of the money is right and should be affirmed. What is said in the prayer for judgment in the complaint, and in the judgment itself, about reforming the contract of assignment, is an immaterial addition to the true cause of action stated, for which a money recovery has been had. So much of the judgment as directs a reformation of the contract is harmless.

O'BRIEN, BARTLETT and MARTIN, JJ., concur with VANN, J.; PARKER, Ch. J., concurs with LANDON, J.; CULLEN, J., takes no part.

Judgment reversed, etc.