907 P.2d 1013

**TWIN FORKS RANCH, INC., a New Mexico Corporation; and Twin Forks Mutual Domestic Water Consumers Association, Plaintiffs–Appellants,**

**v.**

**Robert B. BROOKS and Janice K. Brooks, his wife; and Benjamin F. Brooks and Rosemary Brooks, his wife, Defendants–Appellees.**

No. 15974.

Court of Appeals of New Mexico.

Oct. 10, 1995.

Anthony F. Avallone, Law Systems of Las Cruces, P.A., Las Cruces, Jefferson R. Rhodes, Burroughs & Rhodes, Alamogordo, for Plaintiffs–Appellants.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, for Defendants–Appellees.

## *OPINION*

PICKARD, Judge.

1. Twin Forks Ranch, Inc. (Twin Forks) and the Twin Forks Mutual Domestic Water Consumers Association (Water Association) (collectively referred to as Plaintiffs) appeal from a summary judgment granted to the Brookses on Plaintiffs' claim to reform or rescind two deeds. Twin Forks deeded fifteen acres of land to the Brookses without a reservation of water rights. The district court ruled as a matter of law that the water rights appurtenant to the land passed to the Brookses with the deeds of sale and that no issues of fact requiring a trial were present.

2. During oral argument on appeal, the Brookses conceded that any language in the judgment attempting to quantify the water rights that passed with the deed was a mistake subject to correction under SCRA1986, 1–060(A) (Repl.1992). The parties agreed that the intent of the judgment was simply to adjudicate the claim between the Plaintiffs and the Brookses to whatever water rights were appurtenant to the land. Accordingly, we order the trial court to correct the judgment to reflect, instead of an adjudication "of all water rights produced by Slough Spring ... N.M.P.M.," an adjudication "of all water rights appurtenant to the fifteen acres sold by Twin Forks to the Brookses." Further, any related errors flowing from this error should also be corrected.

3. This correction has two important consequences for this appeal. First, the correction renders immaterial any unresolved facts about the existence and the amount of water rights appurtenant to the land, facts that Plaintiffs assert should have precluded summary judgment. The trial court did not intend to adjudicate Slough Spring water rights on summary judgment. Second, the correction mandates denial of Plaintiffs' motion to vacate the judgment and dismiss the appeal on jurisdictional grounds when all lot owners and members of the Water Association, who may have competing claims to Slough Spring, were not parties to the action. *See La Madera Community Ditch Ass'n v. Sandia Peak Ski Co.,* 119 N.M. 591, 592–93, 893 P.2d 487, 488–89 (Ct. App.1995) (priority of water rights between two competing users may be adjudicated without joinder of all other water users in system).

4. We address serially Plaintiffs' remaining issues that challenge the summary judgment because genuine issues of material fact were allegedly present with regard to: (1) the doctrine of unilateral mistake; (2) the doctrine of mutual mistake; and (3) a variety of other equitable doctrines. We hold that there are genuine issues of material fact only on the doctrine of mutual mistake. Accordingly, we reverse and remand.

FACTS

5. In 1960, Twin Forks purchased and subdivided into a number of units property in the Sacramento Mountains collectively referred to as Twin Forks Ranch. The Ranch included a 160–acre homestead that had used wooden troughs before 1900 to divert water from Slough Spring for irrigation on the homestead. Beginning in 1962, Twin Forks dedicated Slough Spring water to a community water system that supplies approximately two hundred and four families in subdivision units one, two, three, and six. Included within the Ranch, but excluded from the subdivision, was the fifteen-acre parcel at issue that contained the old farmhouse which, at the time of sale, was in disrepair and had been vacant for several years.

6. Twin Forks offered the acreage to Robert Brooks, and on October 24, 1988,

Robert, his brother, and their wives bought for $50,000 the property, which Twin Forks subdivided into two 7.5–acre parcels. The contracts of sale provided each parcel with three water taps to the community water system. The deed to Robert Brooks reserved for Twin Forks a right of ingress and egress along an existing road to the water tank and the Spring. Neither deed reserved water rights or stated the right to water taps.

7. The Water Association was organized in early 1989 to take control of the community water system. The controversy behind this suit arose when the Brookses claimed Slough Spring by virtue of their deeds and began to interfere with the Water Association's use of Slough Spring for the community water system.

DISCUSSION

*Unilateral Mistake*

8. Plaintiffs sought to rescind the deeds pursuant to the Restatement (Second) of Contracts § 153 (1981), which provides for rescission if: (1) unilateral mistake is established; (2) the party requesting relief does not bear the risk of mistake; and (3) among other grounds, enforcement of the contract would be unconscionable. Because we find the second element to be dispositive, we restrict our analysis to a discussion of the allocation of risk. *See Blauwkamp v. University of N.M. Hosp.,* 114 N.M. 228, 232, 836 P.2d 1249, 1253 (Ct.App.) (once party makes prima facie showing of entitlement to summary judgment, burden shifts to opposing party to come forward with admissible evidence tending to establish all required elements of a claim), *cert. denied,* 114 N.M. 82, 835 P.2d 80 (1992).

9. Plaintiffs concede that they bore the risk of mistake only if the trial court's allocation of the risk to them was reasonable under the circumstances. *See* Restatement, *supra,* § 154 (applicable determination of burden of risk). Plaintiffs contend that the trial court acted unreasonably under the circumstances to allocate the risk to them, given the expectations of the parties, the bargained-for consideration, the events surrounding the declaration of water rights that brought the dis-

pute into fruition, and the good faith and fair dealing by Twin Forks. However, when questioned by the trial court during the hearing on why Plaintiffs should not bear the risk of their own mistake, Plaintiffs could furnish no reason for the court to allocate the risk to the Brookses who were not responsible for the mistake.

10. Given the absence of a reason to allocate the risk to the Brookses, we conclude that the trial court acted properly to allocate the risk to Plaintiffs. Where the risk of mistake was properly allocated to Plaintiffs, the deed cannot be rescinded by Plaintiffs for unilateral mistake under Restatement Sections 153 and 154 as a matter of law. *See State ex rel. State Highway & Transp. Dep't v. Garley*, 111 N.M. 383, 387, 806 P.2d 32, 36 (1991) (allocation of risk of mistake analyzed in the context of rescission for mutual mistake on appeal from summary judgment). Therefore, we need not reach Plaintiffs' remaining challenges to this issue. *See In re Estate of Heeter*, 113 N.M. 691, 695, 831 P.2d 990, 994 (Ct.App.) (on appeal, error not corrected if it would not change result), *cert. denied*, 113 N.M. 690, 831 P.2d 989 (1992).

*Mutual Mistake*

11. Plaintiffs also sought relief for mutual mistake. A mutual mistake occurs when the parties have reached an agreement, but the writing either does not express what was really intended, *Sierra Blanca Sales Co. v. Newco Indus., Inc.*, 84 N.M. 524, 530, 505 P.2d 867, 873 (Ct.App.), *certs. denied*, 84 N.M. 472 & 512, 505 P.2d 67 & 855 (1972), or has achieved what neither party intended, *Cargill v. Sherrod*, 96 N.M. 431, 433, 631 P.2d 726, 728 (1981). Under the doctrine of mutual mistake, a written agreement may either be (1) reformed to express the intent of the parties, *Drink, Inc. v. Martinez*, 89 N.M. 662, 664, 556 P.2d 348, 350 (1976); Restatement, *supra*, § 155, or (2) avoided by the adversely-affected party unless that party bore the risk of mistake, *id.* § 152. Having determined that Twin Forks bore the risk of mistake, rescission is not available for mutual mistake. *See Garley*, 111 N.M. at 387–88, 806 P.2d at 36–37. Consequently,

our discussion is limited to the remedy of reformation. *See id.* at 388, 806 P.2d at 37 (reformation available for mutual mistake without regard to allocation of risk of mistake).

12. Because the deed did not reserve water rights, the trial court determined that appurtenant water rights passed with the land as a matter of law, even though Twin Forks did not intend to sell water rights and the Brookses did not know that they were buying water rights. The court's determination rested on the clear language of the deed to the exclusion of extrinsic evidence introduced to establish a contrary intent. *See McCasland v. Miskell*, 119 N.M. 390, 393, 890 P.2d 1322, 1325 (Ct.App.1994) (absent evidence of contrary intent, conveyance of land carries with it appurtenant water rights), *cert. denied*, 119 N.M. 354, 890 P.2d 807 (1995).

13. Extrinsic evidence is admissible to establish that the deed did not express the true agreement of the parties, even if the inconsistency cannot be detected on the face of the deed and becomes clear only in light of surrounding circumstances. *See Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993); *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 510, 817 P.2d 238, 244 (1991); *Drink, Inc.*, 89 N.M. at 664–65, 556 P.2d at 350–51; *cf. Hot Springs Nat'l Bank v. Stoops*, 94 N.M. 568, 570–71, 613 P.2d 710, 712–13 (1980) (despite clear and express terms of promissory notes, which fulfilled all statutory requirements of negotiable instruments, extrinsic evidence of fraud or mistake admissible to reform or avoid the notes); *Ell v. Ell*, 295 N.W.2d 143, 150 (N.D.1980) (if parol evidence were not admissible to show intent or mistake in an action to reform a contract, the parol evidence rule would be rendered an instrument of the very mistake it was intended to prevent).

14. The Brookses argue that there is no evidence that they intended anything other than what was clearly expressed in the deeds and the contracts. Upon review of the attendant facts in a light most favorable to a trial on the merits, we must determine

whether the evidence is capable of an equally reasonable but opposite inference. *See Acosta v. Castle Constr., Inc.*, 117 N.M. 28, 29, 868 P.2d 673, 674 (Ct.App.1994) (on review of appeal from summary judgment, court examines entire record for evidence that places material fact at issue); *Trujillo v. Treat*, 107 N.M. 58, 59–60, 752 P.2d 250, 251–52 (Ct. App.1988) (when conflicting inferences can be drawn from undisputed facts, summary judgment is improper).

15. The parties did not discuss water rights during their negotiations for the sale; instead, they discussed taps into the community water system owned by Twin Forks. Twin Forks contracted to provide six water taps with the sale of the fifteen acres. Although the taps were omitted from the deeds by mistake of an unidentified drafter of the deeds, the right to these taps does not appear disputed.

16. The Brookses did not realize that the land had any appurtenant water rights. Slough Spring water was used solely to supply the community water system. The deed to Robert Brooks contained an easement of access to the water tanks at Slough Spring to service the water system. Robert Brooks owned a forty-acre parcel adjacent to the fifteen-acre parcel. A visual inspection would have confirmed that irrigation from Slough Spring had ceased when the subdivision was platted. Janice Brooks, as a community water user, had participated in past efforts by the water users to purchase the water system with water rights from Twin Forks. There was evidence that appurtenant water rights were in conflict with the community water system because both had Slough Spring as their source, and the system captured most of the water. The Brookses did not declare any appurtenant rights until almost four years after the sale.

17. Twin Forks did not realize that the land had any appurtenant water rights. Although Twin Forks claimed the land would have been "invaluable" had Twin Forks intended to sell the Brookses land and water rights, the sales price would have been $95,000 rather than $50,000.

18. These facts, which are largely undisputed, provide a reasonable inference of mutual mistake at the time of sale. *See Garley*, 111 N.M. at 387, 806 P.2d at 36 (mistake must have occurred at time of contracting); *Trujillo*, 107 N.M. at 59–60, 752 P.2d at 251–52 (even if basic facts are undisputed, when conflicting inferences can be drawn from the facts, summary judgment improper). Arguably, the deeds failed to represent the implicit agreement that no appurtenant water rights were being transferred with the transaction, just as the deeds failed to reflect the explicit agreement to convey water taps with the land. *See Moore v. Mullen*, 123 Idaho 985, 988, 855 P.2d 70, 73 (Ct.App.1993) (mutual mistake occurs when both parties at the time of contracting have a misconception about a basic assumption or vital fact).

19. Comparable misconceptions have provided a basis for reformation of a deed. *See Cunnius v. Fields*, 449 P.2d 703, 706 (Okla. 1969) (deed reformed for mutual mistake because it was "obvious" that minerals were not bargained for or considered in the purchase price when deed mistakenly reserved only a portion of the mineral interest actually owned by seller, when neither party knew or attempted to discover the amount of mineral interest actually owned, when the ·object of the sale was the surface estate, when the buyer had previously purchased contiguous property without minerals at the same price, and when the parties did not negotiate the sale price of minerals). Certainly, the availability of water is a vital issue, *see Thieme v. Worst*, 113 Idaho 455, 459, 745 P.2d 1076, 1080 (Ct.App.) (rescission available when water not deliverable), *cert. denied*, 116 Idaho 467, 776 P.2d 829 (1987), and in this case, the Slough Spring water included in the agreement and the Slough Spring water subsequently claimed by operation of law were potentially mutually exclusive. Where reasonable minds could differ, the trial court erred in granting summary judgment. *See C.R. Anthony Co.*, 112 N.M. at 510, 817 P.2d at 244; *Koenig v. Perez*, 104 N.M. 664, 667, 726 P.2d 341, 344 (1986).

*Equitable Remedies*

20. The Water Association argues that it has a continuing, enforceable right to

Slough Spring water based on the equitable theories of negative easement, estoppel, and constructive trust. These actions in equity are intended to remedy results that are patently unfair and violate public policy by protecting the expectation interests of those who demonstrate detrimental reliance on the actions and conduct of another. *See Bassett v. Bassett,* 110 N.M. 559, 566, 798 P.2d 160, 167 (1990) (constructive trust discussed); *Knight v. City of Albuquerque,* 110 N.M. 265, 266, 794 P.2d 739, 740 (Ct.App.1990) (subdivision property owners had private right of action in equity against developer who induced owners to purchase property by platting an open space to be dedicated to a golf course, but then altered the plan); *In re Estates of Salas,* 105 N.M. 472, 475, 734 P.2d 250, 253 (Ct.App.1987) (estoppel defined).

■ 21. The Water Association failed to demonstrate how the Brookses at the time of sale compromised any *expectation interests,* or caused any detrimental reliance, on the part of the Water Association. At the time of sale, the Water Association had not been formed and Twin Forks had the option of seeking a public utility license instead of transferring the water system to a nonprofit user's association. Therefore, the trial court did not err in granting summary judgment on these issues. *See Blauwkamp,* 114 N.M. at 232, 836 P.2d at 1253 (burden of proof).

CONCLUSION

22. For the foregoing reasons, we affirm the granting of summary judgment to the Brookses on all issues except the doctrine of mutual mistake. We remand to the trial court for a trial on the merits on the issue of reformation for mutual mistake.

23. IT IS SO ORDERED.

WECHSLER and BUSTAMANTE, JJ., concur.