1998-NMCA-129

964 P.2d 838

**TWIN FORKS RANCH, INC., a New Mexico Corporation, and Twin Forks Domestic Water Consumers Association, Plaintiffs–Appellees,**

v.

**Robert B. BROOKS and Janice K. Brooks, his wife; Benjamin F. Brooks and Rosemary Brooks, his wife, Defendants–Appellants.**

No. 18092.

Court of Appeals of New Mexico.

June 17, 1998.

Certiorari Denied Sept. 9, 1998.

Jefferson R. Rhodes, Burroughs & Rhodes, Alamogordo, Anthony F. Avallone, Law Systems of Las Cruces, P.A., Las Cruces, for Plaintiffs-Appellees.

A.J. Olsen, Henninghausen, Olsen & Stevens, LLP, Roswell, for Defendants-Appellants.

## OPINION

FLORES, Judge.

{1}  This is a dispute over the ownership of water rights appurtenant to a fifteen acre tract of land sold to Robert B. Brooks and his family (the Brooks) by Twin Forks Ranch, Inc. (Twin Forks).  The trial court found and concluded that a mutual mistake occurred in the drafting of the real estate contracts and deeds arising out of the land sale, such that the writings did not properly convey six water taps into the community water system, nor properly reserve appurtenant water rights to Twin Forks.  Accordingly, the trial court reformed the writings to include the conveyance of water taps and the reservation of water rights.  The Brooks argue that the evidence of mutual mistake, as it related to the appurtenant water rights, was not substantial, and thus, the trial court's reformation of the writings was in error.  Because we agree with the Brooks that the evidence to support a finding of mutual mistake concerning the appurtenant water rights was not substantial, and that reformation in this regard was improper, we need not address the Brooks' other claims.  We affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

## I. *FACTUAL AND PROCEDURAL BACK-GROUND*

{2} In late September or early October 1988, Steve Wimsatt (Wimsatt), vice president of Twin Forks, approached Robert Brooks with an offer to sell a fifteen acre lot owned by Twin Forks that was adjacent to Robert Brooks' property. This fifteen acre lot, though owned by Twin Forks, was not part of the Twin Forks subdivision. Robert Brooks, on behalf of his wife, Janice K. Brooks, and his brother, Benjamin F. Brooks, and Benjamin's wife, Rosemary Brooks, negotiated briefly with Wimsatt for the property. Wimsatt and Robert Brooks orally agreed that the fifteen acres would be sold for $50,000. They also agreed that the sale would include six water taps into the community's domestic water system, as well as an easement reserving access to the Slough Canyon Spring and community water tank to Twin Forks. This was the complete extent of the parties' negotiations. Neither party ever mentioned appurtenant water rights during their negotiations.

{3} Wimsatt, a real estate broker licensed in New Mexico, drafted the two contracts himself. Each contract conveyed seven and one-half acres. On October 24, 1988, Twin Forks and Robert and Janice Brooks signed one contract for the sale of seven and one-half acres, and Twin Forks and Benjamin and Rosemary Brooks signed a second contract for the sale of the remaining seven and one-half acres. The Brooks received warranty deeds from Twin Forks when they paid the purchase price, but the deeds did not include the water taps that had been contracted for by the parties.

{4} At the time of negotiating the sale of the land, neither the Brooks nor Twin Forks knew whether the fifteen acres had appurtenant water rights. However, Wimsatt knew that unless he reserved the appurtenances in the writings, they would pass with the sale of the land. Wimsatt had a general policy of not discussing appurtenant water rights with potential real estate buyers, but of later including a reservation in the writings. Here, consistent with his policy, he did not discuss water rights with the Brooks. However, Wimsatt also omitted the reservation from the writings. Thus, nothing in this situation would have alerted the Brooks that Twin Forks intended to reserve the appurtenant water rights.

{5} Prior to and at the time of this sale, Twin Forks owned and operated the community water system for those who lived in the Twin Forks Ranch subdivision. The Slough Canyon Spring, which is located on public land outside the subdivision, is a significant source of water for the water system that supplies domestic water to homes in the subdivision. After selling the fifteen acres to the Brooks, Twin Forks came under pressure from the State Engineer to file an application for a change of purpose from agricultural to domestic use of the water from Slough Canyon Spring. No longer wishing to operate the community water system, Twin Forks transferred the assets of the community water system, including water lines, storage tanks, and rights to water from Slough Canyon Spring, to the newly formed Twin Forks Mutual Domestic Water Consumers Association (the Association), which then began supplying water for the domestic use of community members. In approximately 1990, the Brooks began claiming water from the Slough Canyon Spring. In preparation for opening a Christmas tree farm on the fifteen acres, the Brooks contacted the State Engineer to determine what irrigation rights attached to the acreage. Based on evidence of terracing, the State Engineer determined that the land had been used for agriculture, and that appurtenant water rights whose source is the Slough Canyon Spring may attach to the property.

{6} Shortly after the Brooks began claiming water from Slough Canyon Spring, Twin Forks and the Association brought suit to rescind or reform the contracts and deeds to include a reservation of appurtenant water rights. The trial court granted summary judgment in favor of the Brooks, finding that the water rights appurtenant to the land passed as a matter of law because Twin Forks did not reserve those rights. Twin Forks and the Association appealed. In *Twin Forks Ranch, Inc. v. Brooks*, 120 N.M. 832, 835, 907 P.2d 1013, 1016 (Ct.App.1995), this Court held that Twin Forks and the

Association were not entitled to rescind the contracts based on unilateral mistake, and that the Association could not maintain actions for estoppel, constructive trust, or negative easement. *See id.* at 837, 907 P.2d at 1018. However, this Court reversed the grant of summary judgment as it related to the doctrine of mutual mistake, holding that there were genuine issues of material fact concerning whether a mutual mistake occurred that would warrant reformation of the contract. *See id.* at 836–37, 907 P.2d at 1017–18. On remand, the trial court found that a mutual mistake occurred and was grounds for reformation. The trial court reformed the contracts and deeds to include the transfer of six water taps and the reservation of all appurtenant water rights. The Brooks appeal.

## II. *DISCUSSION*

{7} The Brooks argue that the water rights appurtenant to the fifteen acre tract that they purchased passed by operation of law with the conveyance because Twin Forks failed to reserve those rights. *See* NMSA 1978, § 47–1–34 (1947) ("In a conveyance or mortgage of real estate all rights, easements, privileges and appurtenances belonging to the granted estate shall be included in the conveyance, unless the contrary shall be stated in the deed, and it shall be unnecessary to enumerate or mention them generally or specifically."). Here, the parties do not dispute that the real estate contracts and warranty deeds fail to contain such a reservation. The parties, however, do dispute whether they ever agreed to a reservation of appurtenant water rights, and thus, whether the trial court properly reformed the contracts and deeds to include a reservation.

### A. *Standard of Review*

■ {8} The Brooks attack the reformation on the grounds that the evidence of mutual mistake was not substantial. " 'The substantial evidence or clearly erroneous standard of appellate review ... is not applied identically in all instances: the appellate standard of review parallels the trial court burden of proof.' " *In re R.W .*, 108 N.M. 332, 336, 772 P.2d 366, 370 (Ct.App.

1989) (quoting *In re Bush,* 113 Idaho 873, 749 P.2d 492, 495 (1988)). The party seeking to reform a writing must prove by clear and convincing evidence that a mutual mistake occurred. *See Butler v. Butler,* 80 N.M. 36, 38, 450 P.2d 922, 924 (1969); *Wright v. Brem,* 81 N.M. 410, 411, 467 P.2d 736, 737 (Ct.App. 1970). "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Sedillo,* 84 N.M. 10, 12, 498 P.2d 1353, 1355 (1972).

■ {9} Although we will not reweigh the evidence, *see Bassett v. Bassett,* 110 N.M. 559, 563, 798 P.2d 160, 164 (1990), and will view the evidence in the light most favorable to the outcome below, *see In re R.W.,* 108 N.M. at 335, 772 P.2d at 369, we will review the evidence to determine whether a reasonable fact finder could find that it clearly and convincingly supports the trial court's findings of fact. Here, we must reverse the district court because there is not sufficient evidence for a fact finder to be left with an abiding conviction that there was a mutual mistake.

### B. *Mutual Mistake and Reformation*

■ {10} Mutual mistake is grounds for reformation of a written agreement. *See Kimberly, Inc. v. Hays,* 88 N.M. 140, 143–44, 537 P.2d 1402, 1405–06 (1975); *Cleveland v. Bateman,* 21 N.M. 675, 684, 158 P. 648, 650 (1916). According to the Restatement (Second) of Contracts § 155 (1981) [hereinafter Restatement]:

> Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.

Reformation is the remedy for errors in the written expression of an otherwise existing agreement. But, before a court may reform a writing,

the proof must not only establish that the written agreement was not the agreement intended by the parties, but also what was the agreement contemplated by them at the time it was executed.... [P]laintiff 'must not only show clearly and beyond doubt that there has been a mistake, but he must also be able to show with equal clearness and certainty the *exact* and *precise* form and import that the instrument ought to be made to assume, in order that it may express and effectuate what was really intended by the parties.'

13 Samuel Williston, *A Treatise on the Law of Contracts* § 1548, at 124–25 (3d ed.1970) (citations and footnotes omitted) [hereinafter *Williston on Contracts* ].

■ {11} Here, the parties' agreement was reduced to two contracts for the sale of land and two warranty deeds. The contracts provided each parcel with three water taps to the community water system. But neither deed mentioned the water taps. In addition, none of the writings reserved any water rights appurtenant to the land. Both the deeds and the contracts did, however, reserve to Twin Forks an easement across the fifteen acres for access to the Slough Canyon Spring and the community's water collection tank. Clearly, as far as the water taps are concerned, the contracts and deeds do not reflect the same terms. The parties do not dispute that they agreed to include six water taps and the reservation of an easement with the sale of the property. Thus, the trial court was correct in reforming the writings to reflect the true bargain of the parties concerning the water taps.

■ {12} The disputed question concerns the appurtenant water rights. As noted above, reformation is proper only when the party seeking reformation can prove both a mutual mistake in the writings and the content of the parties' true agreement. We next consider whether the writings contain a mistake, and whether the parties agreed that the conveyance would not include the transfer of appurtenant water rights.

{13} The trial court, properly relying on the writings and extrinsic evidence, concluded that the parties' intention was to sell and to purchase fifteen acres of land and nothing

more. *See Twin Forks Ranch,* 120 N.M. at 835, 907 P.2d at 1016 (extrinsic evidence admissible to establish that writing did not express the parties' true agreement, "even if the inconsistency cannot be detected on the face of the deed"). Thus, the trial court concluded that the failure to include language reserving appurtenant water rights in the writings was a mutual mistake because the effect of this failure was to convey such rights by operation of law pursuant to Section 47–1–34 when the parties did not intend that the writings would result in such a conveyance.

■ {14} Although we hold that there is clear and convincing evidence that the parties did not discuss or bargain over the appurtenant water rights, our holding does not mean that the parties necessarily agreed not to convey (or to reserve) appurtenant water rights. Rather than infer an agreement *not* to convey appurtenances, we hold that there was insufficient evidence to prove that the parties reached any agreement concerning appurtenant water rights.

{15} At the time that the parties struck their bargain, neither knew there were water rights appurtenant to the fifteen acres. Given that the parties did not know of the rights and never discussed water rights at all, we cannot say that there is clear and convincing evidence of an agreement either to sell or to retain such rights. *Cf. Williston on Contracts, supra,* § 1548, at 128 n. 15 (when a "claim ... was not in the mind of either party, for neither supposed it to exist, ... their minds could not have met on the transfer of such a claim....") (quoting *Curtis v. Albee,* 167 N.Y. 360, 60 N.E. 660 (1901)). Rather than reform the contract to include a provision never contemplated by the parties, we hold that there is no agreement to which the writings should be reformed. *See Williston on Contracts, supra,* § 1548, at 122 (equity insists "that the parties shall have come to a complete mutual understanding of all the essential terms of their bargain, for, otherwise, there would be no standard by which the writing could be reformed."). Thus, the contract and deeds should remain as originally written, without a reservation of water

rights, and the Brooks should obtain the appurtenant water rights by operation of law.

{16} Our conclusion is not altered by two findings made by the trial court that are relied upon by Twin Forks. First, the trial court found that "[t]he negotiations and the acquisition of six water taps would be inconsistent with any contemplation that water rights whose source was the Slough Canyon Spring were intended to be acquired." Second, the court found that "[i]t was potentially inconsistent on the part of the Brookses to intend to acquire water rights whose source was Slough Canyon Spring and also agree to grant to Twin Forks Ranch, Inc., a right of ingress and egress to the water tank and spring across the existing road." To begin with, we note that neither of these findings would create a reservation of rights as a matter of law. With respect to the acquisition of six water taps, there is nothing inconsistent with conveying both water taps and appurtenant water rights. The taps could provide water for domestic use while appurtenant water rights would provide water for irrigation. *Cf. McCasland v. Miskell*, 119 N.M. 390, 393, 890 P.2d 1322, 1325 (Ct. App.1994) (when seller owns more that one type of interest in water, seller's express conveyance of one set of water rights did not have the effect of reserving any other water rights.)

{17} As for the grant of a right of ingress and egress to the water tank and spring, that grant is not inconsistent with the ownership of appurtenant water rights by the Brooks. The evidence indicated that the Brooks were not attempting to make exclusive use of the water, nor attempting to use all the water from the spring. Even if the Brooks' use of water from the spring resulted in a decreased or inadequate supply of water to the Association, as is claimed by Twin Forks, the Brooks' rights to the water would not be destroyed. Rather, the existing water would be shared by the parties.

{18} To be sure, one might infer from the transfer of the water taps and the grant of a right of access to the water tank and spring that the parties would have agreed to a reservation of the water rights if they had in fact addressed the issue. But the inescap-able fact is that there is no evidence of any negotiation between the parties regarding the appurtenant water rights. And reformation is not available in this case to create an agreement not in fact arrived at by the parties.

{19} Further, our conclusion is not inconsistent with *Cunnius v. Fields*, 449 P.2d 703 (Okla., 1969). In that opinion, which was cited with approval in *Twin Forks Ranch*, 120 N.M. at 836, 907 P.2d at 1017, the court reformed a deed to reserve a one-half interest in the oil, gas and other mineral rights on the land conveyed when the original deed reserved only a one-fourth interest. At the time of the sale, the grantors believed that they had only a one-fourth interest, but they later learned that they had a one-half interest. The reason for the reformation, however, can be understood as not so much to correct an error regarding the extent of the interest held by the grantors, but to reflect the actual agreement of the parties that only a surface estate in the land was to be conveyed. The property conveyed in the deed itself was described as: "[t]he surface and surface estate in and to...." *Cunnius*, 449 P.2d at 705. The court noted: "The evidence also shows that the [grantees] were aware of the conveying language in the deed 'surface and surface estate.' It is clear that the object of the purchase was for the surface only." *Id.* at 706. In addition, the court wrote: "The record reveals that [one of the grantors] had informed the scrivener to prepare a surface deed to the property to be conveyed. Instead of following this instruction, the scrivener added to the surface deed a reservation of mineral interest without checking the records to determine the exact amount owned by the grantors. This evidence was uncontradicted." *Id.* In short, the court in *Cunnius* simply reformed the deed to conform to the agreement of the parties. Here, however, there was no attempt to reserve any type or amount of appurtenant water rights, either in the writings or in the words or acts of the parties. Water rights were never even considered in the instant case. Thus, reformation was inappropriate.

### C. The Limits on Reformation Serve Fundamental Principles of Contract Law

{20} Reformation should not be used by the court to add to, modify, or redraft the terms of a contract in light of newly discovered information: It is not the role of the court to rewrite the terms of the parties' agreement. *See Williston on Contracts, supra,* § 1548, at 128 ("'What the parties did not agree to cannot be added by the court.'") (quoting *Curtis,* 60 N.E. at 662). It is a well-established principle of contract law that if "the parties make a written agreement that they would not otherwise have made because of a mistake other than one as to expression, the court will not reform a writing to reflect the agreement that it thinks they would have made." Restatement § 155 cmt. b; *see also Montoya v. Villa Linda Mall, Ltd.,* 110 N.M. 128, 129, 793 P.2d 258, 259 (1990) (court "cannot create a new agreement for the parties"); *CC Hous. Corp. v. Ryder Truck Rental, Inc.,* 106 N.M. 577, 579, 746 P.2d 1109, 1111 (1987) ("[T]he court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties."). Thus, we are unwilling to reform the contracts and deeds to include a reservation that was not clearly and convincingly part of the original agreement because we will not rewrite the contract for the benefit of Twin Forks.

{21} Here, the law is not inclined to relieve Twin Forks of its obligation to convey the water rights because the consequence of not reserving the water rights (either in the oral agreement or in the writings) was neither unforeseen nor unforeseeable. Wimsatt, Twin Forks' vice president and a real estate broker, knew that failing to include a reservation would result in a grant of the appurtenances. Though he may not have known, at the time of contracting, whether the fifteen acre lot had appurtenant water rights, it was his obligation under Section 47-1-34 to protect any rights he may have had. Twin Forks cannot expect the law to reform the contract based on the subsequent discovery of water rights and based on what Twin Forks would have done had it known of the rights. The time to inquire as to the value of the property being sold is prior to sale, not after the bargain is struck. *See Williston on Contracts, supra,* § 1548, at 127 ("It is not enough to justify reformation that the court is satisfied that the parties would have come to a certain agreement had they been aware of the actual facts."). *Cf. Marrujo v. Chavez,* 77 N.M. 595, 601, 426 P.2d 199, 203 (1967) ("'When there is no mistake but merely a lack of full knowledge of the facts, which, as here, is due to the failure of a party to exercise due diligence to ascertain them, there is no proper ground for relief.'") (quoting *Harris v. Spinali Auto Sales Inc.,* 240 Cal.App.2d 447, 49 Cal.Rptr. 610, 615, (1966)).

### III. CONCLUSION

{22} For the foregoing reasons, we affirm the trial court's reformation of the contracts and deeds to include the sale of six water taps. We reverse the trial court's determination that the contracts and deeds should be reformed to include a reservation of appurtenant water rights. Consequently, we remand for a trial on all remaining counterclaims.

{23} **IT IS SO ORDERED.**

HARTZ, C.J., and ARMIJO, J., concur.