This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**ROBERT JAMES BRANSFORD,**
**a/k/a JIM BRANSFORD,**

    Plaintiff-Appellant,

v.                                                                                    **NO. 31, 643**

**MICHAEL BRANSFORD** and
**RANCHO VERANO, LLC,**
a New Mexico limited liability company,

    Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Barbara J. Vigil, District Judge**

Alex Chisholm
Albuquerque, NM

for Appellant

VanAmberg, Rogers, Yepa, Abeita & Gomez, LLP
Ronald J. VanAmberg
Santa Fe, NM

for Appellees

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** Plaintiff appeals the district court's orders of summary judgment denying Plaintiff's motion to modify a past settlement agreement between the parties and awarding Defendant Michael Bransford reasonable costs and attorney fees. The district court concluded that Plaintiff's effort to alter the agreement sought reformation of that contract, a remedy that was unavailable under the circumstances of the case. Further, the district court ruled that as a result of a prior general release signed by both parties, Defendant Michael Bransford was entitled to an award of reasonable costs and attorney fees associated with the litigation of this matter. On appeal, Plaintiff contends that the district court erred in applying the law of rescission to the facts of this case and in determining that the general release was binding on the parties with regard to this matter. We conclude that the district court was correct to grant summary judgment on the motion to modify the settlement agreement, but did err in awarding Defendant Michael Bransford court costs and attorney fees. Thus, we affirm in part and reverse in part.

## I.    BACKGROUND

**{2}** In October 2005, Plaintiff Robert James Bransford, a/k/a Jim Bransford, (Jim) brought suit against his brother, Defendant Michael Bransford (Michael) and his

limited liability company, Rancho Verano, LLC, for breach of a land contract. The court awarded Jim the net profits of the sale of the land, and the parties agreed to a settlement conference as to the remaining points of contention. In October 2006, the parties signed a settlement agreement awarding Jim $350,000.]

{3}     Following an ensuing dispute between the brothers, Jim and Michael executed a second settlement agreement in May 2007.  In that matter, Michael again acted individually and as a managing member of a separate limited liability company, The Rock, LLC. The latter settlement agreement contained a "Full and Complete Release of Claims" provision. The clause stated that "[t]he [p]arties agree to fully and completely release each other . . . from any and all claims upon all matters related to the parties that may or could have occurred at any time, including but not limited to those claims arising out of this dispute." Furthermore, the settlement agreement provided that in the event that one party violated the terms of the settlement, the breaching party would "be responsible for any ensuing court costs and [would] be required to pay the other party's attorney[] fees incurred in enforcing the Settlement Agreement."

{4}     Nearly three years after signing the first settlement agreement, Jim filed a motion in July 2009 to reopen the Rancho Verano litigation in order to modify the 2006 settlement agreement. In his motion, Jim alleged that he was owed an additional

$43,031.48 as a result of a miscalculation of the net profits. The motion asserted that prior to executing the settlement agreement, the parties contemplated land development costs to be $48,188; however, after the settlement had been executed, Jim obtained a copy of the development cost invoice and discovered that the costs instead totaled $5,156.52. Jim contended that the settlement amount was partially based on this figure and that this miscalculation may have been the result of a mistake or it may have been the result of fraud, misrepresentation, and falsification of evidence.

{5}     In response to this motion, Michael filed a motion to add a claim for court costs and attorney fees. Michael asserted that Jim breached the complete release contained in the 2007 settlement agreement in seeking to reinstate litigation on the 2006 settlement agreement. Michael claimed that the reopening of the preceding litigation entitled him to recover costs and attorney fees. Michael then filed two motions seeking summary judgment on his motion for court costs and attorney fees and on Jim's motion to modify the 2006 settlement agreement. The district court granted both. As to the former, the district court ruled that Michael was entitled to "reasonable costs and attorney fees incurred in this matter both as of now and in the future until the conclusion of [the] litigation." In granting the latter motion for summary judgment, the district court concluded that Jim's attempt to modify the 2006

4

agreement improperly sought the remedy of reformation, whereas the appropriate manner of redress would have been for Jim to file a "motion for rescission and restitution, which requires a return of all sums received under the [s]ettlement [a]greement[.]" The court found that neither a return tender of the settlement proceeds had been made nor had the remedy of rescission been sought; therefore, summary judgment was granted. Following a fee hearing, the district court granted Michael $14,017.65 in attorney fees. Jim's present appeal followed.

## II.    DISCUSSION

{6}    On appeal, Jim asserts that he is pursuing damages as a result of misrepresentation and fraud in the calculation of the net profits at issue in the 2006 settlement, and does not seek to rescind that contract. He further argues that the general release of the 2007 settlement agreement is not binding on the parties' 2006 settlement agreement because the settlement agreements resolved two separate disputes and involved a different set of litigants.

{7}    Because an appeal from a grant of a summary judgment presents a question of law, we review the district court's decision de novo. *Bartlett v. Mirabal*, 2000-NMCA-036, ¶ 4, 128 N.M. 830, 999 P.2d 1062. "Summary judgment is proper when there is no genuine issue of material fact and the [movant] is entitled to judgment as a matter of law." *Handmaker v. Henney*, 1999-NMSC-043, ¶ 18, 128 N.M. 328, 992

P.2d 879 (internal quotation marks and citation omitted). "If the facts are not in dispute, and only their legal effects remain to be determined, summary judgment is proper." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241. We view the facts in the light most favorable to the nonmoving party, and we draw all reasonable inferences in favor of a trial on the merits. *Id.*

{8}     A settlement agreement is considered to be a species of contract, and we have previously recognized the strong public policy in favor of the "freedom to contract." *Builders Contract Interiors, Inc. v. Hi-Lo Indus., Inc.*, 2006-NMCA-053, ¶ 8, 139 N.M. 508, 134 P.3d 795 (internal quotation marks and citation omitted). Accordingly, the parties to a contract agree to be bound by its provisions and must accept advantages that are often accompanied by disadvantages. *Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 31, 123 N.M. 526, 943 P.2d 560. When parties freely negotiate a contract and agree to their rights and remedies under it, it becomes the duty of the court to enforce the contract's terms in a manner that effectuates the parties' intentions. *Id.* ¶¶ 24, 31. The court's role is limited to contract interpretation, and courts cannot redraft the terms of the contract merely based upon the materialization of newly discovered information. *Twin Forks Ranch, Inc. v. Brooks*, 1998-NMCA-129, ¶ 20, 125 N.M. 674, 964 P.2d 838. When interpreting an unambiguous contract, courts must enforce the clear language of the contract.

*Nearburg*, 1997-NMCA-069, ¶ 23. Except in situations where the contract was created under conditions of fraud, illegality, mistake, or unconscionability, courts do not have the discretion to interfere with the terms the parties have set for themselves. *Builders Contract Interiors*, *Inc.*, 2006-NMCA-053, ¶ 8.

{9}     Jim argues that the district court erred in concluding that rescission, and not modification, was the pursuable remedy under the circumstances of this case. He further asserts that the district court erred in ruling that he was liable to Michael for any reasonable costs and attorney fees that Michael incurred as a result of this litigation. As well, Jim contends that the provision of the 2007 settlement agreement awarding attorney fees is inapplicable to the subject matter of the preceding Rancho Verano litigation. We disagree with Jim's contention as to the modification and conclude that no genuine issue of material fact existed as to this issue, entitling Michael to summary judgment as a matter of law. However, we determine that, based on this court's recent decision in *Benz v. Town Center Land*, *LLC*, 2013-NMCA-___, ___ P.3d ___ (No's. 31,669, 32,031, August 29, 2013), the district court erred in awarding Michael reasonable costs and attorney fees because the 2007 settlement agreement was not sufficiently specific to release Rancho Verano, LLC as a corporate defendant.

**{10}** As to the issue of rescission, Jim insists that the preexisting settlement agreement should otherwise remain intact, but that additional compensation is owed to him due to a miscalculation in the net profits of the land proceeds which was the underpinning dispute and basis for the 2006 agreement. He thus seeks reformation of the contract which is "the remedy for errors in the written expression of an otherwise existing agreement." *Twin Forks Ranch, Inc.*, 1998-NMCA-129, ¶ 10 (internal quotation marks and citation omitted). However, before a court can reform an agreement freely negotiated between the parties, the party seeking to reform must show that the contract did not represent the agreement the parties intended to make. *Id*. The movant must also present the agreement the parties intended instead to be effectuated. *Id*.

**{11}** In the present case, the settlement agreement is unambiguous. The relevant provision provides that "Rancho Verano, LLC shall pay to Jim[,] the sum of $350,000, together with interest accrued thereon at the rate of 6% per annum from October 11, 2006 until paid in full." When a contract is specific, clear, and certain, we must enforce the language the parties agreed upon in their negotiations. *Nearburg*, 1997-NMCA-069, ¶ 23. Jim seeks to reform this contract on the basis that the development costs were not what he understood them to be; yet, he signed the settlement agreement before he obtained an invoice of the actual development costs. *See Twin Forks Ranch,*

*Inc.*, 1998-NMCA-129, ¶ 21 (holding that the time to inquire about the value of an asset is before and not after the bargain is struck).

{12}     Additionally, Jim does not cite any documentation in the record proving that the parties considered the development costs to be a numeric determinant in the computation of the settlement sum. *Id*. ¶ 10. Nor are we alerted to any indication of precisely how and on what basis the parties calculated the $350,000 agreed to. *See id*. Without proof that the parties contemplated the development costs in the computation of the settlement sum, or the weight given to that as a settlement factor, we can find no affirmative showing of the fraud Jim alleges, nor even mutual mistake or other permissible factor upon which a contract's reformation may be appropriately based. *See Hansen v. Ford Motor Co.*, 1995-NMSC-044, ¶ 12, 120 N.M. 203, 900 P.2d 952 (concluding that a party's own subjective, unilateral intent is insufficient to establish an inequity in the contract).

{13}     Thus, the district court was correct to disallow retroactive modification to the contract the parties created in the course of their negotiations on the basis that Jim was unaware of the actual development costs and by indulging the assumption that such would have altered the specific agreement reached. *See Twin Forks Ranch, Inc.*, 1998-NMCA-129, ¶ 21 (noting that there is no proper ground for relief where there is merely a lack of complete knowledge of the facts and the failure of a party to obtain

those facts). In signing the settlement agreement, Jim accepted the burdens of the contract as well as the benefits, and we decline to provide him with an additional benefit under the contract to the detriment of Michael. *Nearburg*, 1997-NMCA-069, ¶ 23 ("A court cannot change contract language for the benefit of one party to the detriment of another.").

{14}     With regard to the district court's order of summary judgment granting attorney fees and costs, the language of the 2007 general release provision lacks sufficient specificity to conclude that it applies or was intended to apply to Rancho Verano, LLC as a corporate defendant. "[A] general release raises a rebuttable presumption that only those persons specifically designated by name or by some other specific identifying terminology are discharged." *See Hansen*, 1995-NMSC-044, ¶ 33. Without a specific designation indicating the corporate defendants to which the release applies, the party "seeking to be discharged must prove by extrinsic evidence that the parties to the agreement actually intended to discharge [that party] from liability." *Benz*, 2013-NMCA-___, ¶ 32 (internal quotation marks and citation omitted). Here, Rancho Verano, LCC is not specifically designated as a party to be released by the agreement, **[RP 147]** nor is there any extrinsic evidence in the record tending to show that Rancho Verano, LLC was a party intended to be released by the agreement. Accordingly, without specificity of corporate designation and without any extrinsic evidence

10

indicating the parties intended Rancho Verano, LLC to be released by the 2007 settlement agreement, we cannot determine that Rancho Verano, LLC was an intended beneficiary of the general release. *See Benz*, 2013-NMCA-___, ¶¶ 32-33. Because the district court granted summary judgment on Michael's motion for court costs and attorney fees resulting from the purported breach of the 2007 settlement agreement, we reverse and remand for additional proceedings to be held in accordance with our decision in *Benz. See id.*

**III.    CONCLUSION**

{15}    For the reasons set forth above, the rulings of the district court are affirmed in part, reversed in part and remanded for further proceedings.

{16}    **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**



_____
**RODERICK T. KENNEDY, Chief Judge**

_____

**MICHAEL E. VIGIL, Judge**