526 So.2d 422 (1988)
George O. SWINDELL, d/b/a Diamond Realty Construction Co.
v.
James BULGER and Jason Wooliver, d/b/a Mama Rosa's Little Slice of Italy Pizza.
No. CA-9183.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1988.
Michael G. Bagneris, Darryl K. Henderson, Walter & Bagneris, New Orleans, for defendants-appellants.
Joseph Neves Marcal, III, New Orleans, for plaintiff-appellee.
Before BARRY, CIACCIO and PLOTKIN, JJ.
*423 PLOTKIN, Judge.
Appellants, James Bulger and Jason Wooliver, d/b/a Mama Rosa's Little Slice of Italy Pizza, seek reversal of a trial court judgment awarding appellee, George C. Swindell, d/b/a Diamond Realty Construction, $27,926.25 for repairs appellee allegedly performed on Mama Rosa's restaurant.
Appellants entered a building contract with appellee for repairs and remodeling of their two-story restaurant, Mama Rosa's, located at 616-618 Rampart Street in New Orleans, on September 10, 1985. The repairs and renovations were necessitated by fire damage to the property.
The contract between the parties contains two parts: a typewritten portion prepared by appellee Swindell and a handwritten addendum prepared by the appellants' architect, Robert Kearney, and incorporated into the typewritten contract by a handwritten notation. The typewritten contract states that the appellants bind themselves to pay the appellee "$189,989.41 less rebates of work not completed and a stop at $145,000." The stated purpose of the addendum was to explain "the scope of the work for Mama Rosa's restaurant by Diamond Realty [and] Construction." The addendum continues:
The following descriptions indicate the scope of the work anticipated including:
1) Ground floor to be finished and ready for occupancy with all necessary electrical, mechanical and plumbing items or per plans as the first phase of the work.
2) Second floor to be completed immediately following ground floor with exception that 2nd floor hood and related code items will be completed with ground floor for initial opening.
3) Contract amount is $145,000 for work primarily including 1st floor, skylights and glass, 2nd floor code related work and a portion of second floor work. Total work scope for 1st and 2nd floor is $160,000 plus allowances. ...
3A) Change order to be issued for work over $145,000.
Originally, the parties contemplated that appellee would stop work once the cost of the repairs and renovations reached $145,000. Appellants had received $150,000 from their insurance company and had paid their architect $5,000. The parties intended to omit some of the things originally in the restaurant which the insurance company had paid to replace. The appellants were to receive "credits" for the things not installed to go toward payment for some things for which the insurance company had not paid.
After appellee's company began work on the project, the parties discovered that the City of New Orleans would not allow the restaurant to reopen unless it met new codal requirements passed since the restaurant was originally opened. Among other things, the City required a new hood on the second floor of the restaurant and a second stairwell.
Originally, the appellee promised appellants that he would have the restaurant ready for reopening on October 17, 1985. However, at a September 15, 1985 meeting, the appellants informed Swindell and his subcontractors that the restaurant needed to be ready for business on September 21, 1985. The record shows that the work performed by appellee prior to the September 15 totalled $133,309.
The ground floor of the restaurant was opened on September 21, 1985. After the restaurant had been operating for about a week, the appellee brought his workers back to the premises to begin the work on the second floor. A meeting was held between the appellee and the appellants on October 10, 1985. Appellee continued to work on the project for some five days after that meeting. Appellee presented appellants a "Final Bill and Extras on Work Completed" totalling $52,926.25 on October 15, 1985. Appellants paid $25,000, which brought the total they had paid appellee to $145,000, then refused to pay the balance of the bill.
Appellant filed suit to recover the $27,926.25 balance, on the basis of the contract and, alternatively, on the basis of quantum *424 meruit and unjust enrichment. Appellants defended on the basis of their contention that they were liable to appellant for only $145,000 unless they gave him written permission to exceed that amount. The case was referred by the Civil District Court to a commissioner, who found in favor of Diamond Construction for the total $27,926.25 claimed. The commissioner's decision was based primarily on his finding that the appellants "knew, prior to completion, that the scope of the job could not be completed for their desired amount of $145,000." The trial court adopted the commissioner's findings over the objections of the appellants. This appeal followed.
We find no error in the findings of the commissioner or the ruling of the trial court. The addendum to the contract between the parties simply requires that a "change order ... be issued for work over $145,000." There is no requirement that the change order be in writing.
Appellants claim that they were not aware that the project was exceeding the $145,000 limit until the October 10, 1985 meeting and that the appellee was fired at that time and did not perform any more work on the premises. However, the testimony of the appellants' own agent, their architect, Kearney, establishes that they were aware that the work had gone over the amount originally contemplated by the parties long before October 10, 1985. Kearney stated that the owners of the property were informed at least as early as the September 15 meeting that the restaurant could not open unless more than the $145,000 was spent. Kearney testified as follows:
Q. At that meeting, did you ever inform the owners that the work that was done at that time had exceeded $145,000?
A. I'm sure that I did.
Q. That you did?
A. I'm sure that I did, yeah. It was so clear that we were over the budget, that it was, like, really common knowledge. Trial transcript, page 76.
Additionally, the appellants' contention that appellee had not performed any work after the October 10 meeting was rebutted by delivery slips and salary invoices produced by Swindell at trial.
In a case with very similar factual circumstances, this court has held that since construction contracts do not have to be in writing in this state, written construction contracts may be modified by oral agreements and by the conduct of the parties, even when the written contract provides that all change orders must be in writing. Pelican Electrical Contractors v. Neumeyer, 419 So.2d 1, 5 (La.App. 4th Cir. 1982), writ denied 423 So.2d 1150 (La. 1982). The evidence adduced at trial in the instant case establishes by a preponderance of the evidence that by the time the September 15 meeting occurred the appellants were concerned only with getting their restaurant ready for business. Kearney testified as follows:
A. Well, the kind of authorizations that occurred were statements from Jason [Mr. Wooliver], who I was primarily working with that "The job needs to get done, and I can't tell you other than that. The job needs to get done." Those kinds of statements were what I got, you know, what I heard. This was an extremely problem-filed type of conclusion to a job. You know, as an owner, I could well understand how he could be very, you know, kind of unable to come up with any detail other than, "Get the job finished." He not being a lawyer or an architect, I could well understand how it would be difficult for him to really be sitting there and saying, "Well, get the job finished, except leave out this and put that and leave out that." Primarily, the scope of the work that was done by the contractor, you know, had to be done or else the job wouldn't open. I think that there's, you know, a lot of confusion, but the work he didWell, he couldn't have done any less from what I could see and satisfied the owners' request and satisfied the fact that the parish *425 would open the job. Trial transcript, pages 63-64.
The evidence adduced at trial establishes that although the appellants were initially concerned that the cost not exceed the $145,000 balance of their insurance recovery, they later authorized work in excess of that amount which was required to get the necessary permits to open the restaurant. They may not now claim the protection of the terms of their original contract.
In the absence of manifest error, this court will not disturb the factual findings of a trial court when, as here, "there was evidence ... which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding...." Veal v. Church's Chicken of New Orleans, 459 So.2d 703, 705 (La.App. 4th Cir.1984). Since we find no manifest error in the findings of the commissioner or the trial court, we affirm.