1999-NMCA-080

984 P.2d 177

**A.D. POWERS, d/b/a Powers Structures, Plaintiff–Appellant/Cross–Appellee,**

v.

**Wendell G. MILLER and Janet B. Miller, husband and wife, Defendants–Appellees/Cross–Appellants.**

No. 19,244.

Court of Appeals of New Mexico.

May 17, 1999.

J. Robert Beauvais, J. Robert Beauvais, P.A., Ruidoso, for Appellant/Cross–Appellee.

Don E. Dutton, The Dutton Firm, Ltd., Ruidoso, for Appellees/Cross–Appellants.

## OPINION

WECHSLER, Judge.

{1} A.D. Powers d/b/a Powers Structures (Contractor) appeals and Wendell G. and Janet B. Miller (Homeowners) cross-appeal from the trial court's judgment in this dispute over the construction of a residence. On appeal, Contractor raises two issues of first impression. First, he argues that the trial court erred in requiring proof by clear and convincing evidence that the parties modified their written contract by a subsequent oral agreement. We hold that the trial court was correct in ruling that oral modifications to written contracts requiring modifications be in writing must be proven by clear and convincing evidence. Second, Contractor argues that this Court lacks jurisdiction over Homeowners' cross-appeal because Homeowners did not timely file notice of cross-appeal. We hold that the notice was timely and in so doing clarify the application of the rule concerning computation of time to the facts of this case.

{2} In addition, Contractor contends that the trial court erred in allowing parol evidence to clarify the contract regarding the intended use of areas labeled "storage room" and "unexcavated space" on the plans. He also contends that the trial court erred by determining that he had not proven the oral modifications to the contract, by rejecting his defenses of equitable estoppel and mitigation of damages, and by denying him recovery in quantum meruit for the additional work performed on the residence.

{3} In their cross-appeal, Homeowners argue that the trial court erred in offsetting their damages for substandard work by an amount representing the expense of modifications or additional items that Homeowners agreed they had requested. We affirm the judgment of the trial court.

*Facts*

{4} Contractor is a licensed general contractor. In 1993, Homeowners approached Contractor about building a home for them. After discussing the design and negotiating the price, on November 28, 1993, the parties entered into a written contract for the construction of a residence for a price of $258,-450.35. The contract consisted of a written agreement labeled "proposal and acceptance," two pages of specifications drawn up by Contractor based on the discussions concerning the design, and plans drawn up by someone hired by Contractor. The contract provided that "[a]ny alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate." The contract also warranted that all work would be completed "in a workmanlike manner according to standard practices."

{5} As often happens, the house that was built differed in a number of respects from the plans and specifications. After Homeowners moved into the house, Contractor presented Homeowners with a list of additional costs that were the result of mod-

ifications to the plans and specifications. Contractor contended that Homeowners had requested or authorized these items as additional expenses over and above the contract price. Homeowners paid for some of the alleged changes or modifications but refused to pay for others. After Homeowners moved into the house, they discovered a number of problems. Homeowners asked Contractor to fix the problems with the house. Contractor fixed some but not all of the problems.

{6} When the parties were unable to resolve their differences, Contractor filed suit against Homeowners. Contractor sought to recover the cost of what he refers to as "extras," meaning items not required by the written plans and specifications. In the alternative, Contractor contended that he should be compensated for the cost of the extras under the theory of quantum meruit. Homeowners denied that they had requested the extras and counterclaimed for the cost of repairing certain allegedly substandard aspects of the home.

{7} The case was tried to the bench in July 1997. Neither side was satisfied by the outcome. The trial court determined that oral modifications to written contracts must be proven by clear and convincing evidence. The trial court determined generally that the contract was ambiguous as to some items, that it was silent as to others, and that still other changes or additions had been made unilaterally by Contractor without the prior approval of Homeowners. Thus, the trial court concluded that Homeowners only owed Contractor for certain extras that they had stipulated to during trial. The total cost of these items was $5346.67. In addition, the trial court concluded that some of the work was substandard and awarded Homeowners $9395, the cost of correcting the problems. The trial court rejected Homeowners' contention that they had already paid the additional $5346.67 owed to Contractor and offset that amount against the cost of fixing the various problems. Thus, the trial court entered judgment in favor of Homeowners in the amount of $4047.33. These appeals followed.

*Standard of Proof*

■ {8} Contractor contends that the trial court erred in determining that he was required to prove the oral modifications to the contract by clear and convincing evidence. We disagree. A written contract may be modified by a subsequent oral agreement, even though the written contract requires that modifications be in writing. *See Medina v. Sunstate Realty, Inc.*, 119 N.M. 136, 138–39, 889 P.2d 171, 173–74 (1995). The question before this Court is simply the standard or quantum of proof required to prove such modifications.

{9} Contractor relies on *Superior Concrete Pumping, Inc. v. David Montoya Construction, Inc.*, 108 N.M. 401, 404, 773 P.2d 346, 349 (1989), for the proposition that oral modifications to written contracts need only be proven by a preponderance of the evidence. However, *Superior Concrete Pumping, Inc.* involved oral modifications to an oral contract, not to a written contract, as in this case. *See id.* In *Archuleta v. Velasquez*, 60 N.M. 97, 99, 287 P.2d 989, 991 (1955), our Supreme Court held that "evidence of rescission of a written contract by a subsequent parol agreement must be clear, positive and above suspicion." *See also A & P Constr. Co. v. Dorn*, 79 N.M. 292, 292, 442 P.2d 782, 782 (1968) ("[E]vidence of rescission of a written contract by a subsequent parol agreement must be clear, positive and convincing."); *Driver–Miller Plumbing. Inc. v. Fromm*, 72 N.M. 117, 118–19, 381 P.2d 53, 54 (1963) (assuming without deciding that oral modifications of written contracts must be proven by clear and convincing evidence because evidence was clear and convincing in that case); *Twin Forks Ranch, Inc. v. Brooks*, 1998–NMCA–129, ¶ 8, 125 N.M. 674, 964 P.2d 838 ("The party seeking to reform a writing must prove by clear and convincing evidence that a mutual mistake occurred.").

{10} We consider rescission to be sufficiently analogous to modification that it is appropriate to apply a heightened standard of proof to oral modifications of written contracts that specify that modifications must be in writing. We are aware that the phrasing of the standard varies slightly from case to case. However, we believe that it is appro-

priate to characterize the standard of proof as clear and convincing evidence because that phrase is a term of art with a well-established meaning. *See In re Sedillo,* 84 N.M. 10, 12, 498 P.2d 1353, 1355 (1972) ("For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true.").

■ {11} We find support for our decision in cases from other jurisdictions that require that a subsequent oral modification of a written contract be proven by clear and convincing evidence. *See City Nat'l Bank v. First Nat'l Bank & Trust Co.,* 22 Ark.App. 5, 732 S.W.2d 489, 492 (1987) (clear and convincing evidence); *Kline v. Clinton,* 103 Idaho 116, 645 P.2d 350, 355 (1982) (clear and convincing); *Duncan v. Cannon,* 204 Ill. App.3d 160, 149 Ill.Dec. 451, 561 N.E.2d 1147, 1149 (1990) (clear and convincing evidence); *Glass v. Bryant,* 302 Ky. 236, 194 S.W.2d 390, 393 (1946) (clear and convincing); *Duffy v. Park Terrace Supper Club, Inc.,* 295 Minn. 493, 206 N.W.2d 24, 28 (1973) (clear and convincing); *Jenson v. Olson,* 144 Mont. 224, 395 P.2d 465, 469 (1964) (clear, convincing, and inconsistent with written contract); *Lambe–Young, Inc. v. Cook,* 70 N.C.App. 588, 320 S.E.2d 699, 702 (1984) (clear and convincing); *Mathis v. Thunderbird Village, Inc.,* 236 Or. 425, 389 P.2d 343, 349 (1964) (clear and convincing), *Nicolella v. Palmer,* 432 Pa. 502, 248 A.2d 20, 23 (1968) (clear, precise, and convincing); *Combs v. McLynn,* 187 W.Va. 490, 419 S.E.2d 903, 907 (1992) (clear and positive evidence). *But see Freeman v. Stanbern Constr. Co.,* 205 Md. 71, 106 A.2d 50, 55 (1954) (preponderance of the evidence); *Gagnon v. Wright,* 200 A.2d 196, 198 (D.C.1964) (same); *Swindell v. Bulger,* 526 So.2d 422, 424 (La.Ct.App.1988) (same). We recognize that not all of these cases include written contracts with a provision that any modification must be in writing, or make such a distinction. Nonetheless, we limit our decision today to the facts before us. Thus, oral modifications to a written contract requiring that any modifications must be made in writing must be proven by clear and convincing evidence.

{12} We note that different courts have attributed the clear and convincing standard of proof to different reasons. Some courts appear to relate this heightened standard of proof to similar requirements for claims of fraud, accident, or mistake. *Compare Nicolella,* 248 A.2d at 23–24, *with Barrett v. Bank of America, N.T. & S.A.,* 183 Cal.App.3d 1362, 229 Cal.Rptr. 16, 21–22 (1986) (rejecting use of clear and convincing standard because California does not apply a heightened standard of proof to fraud claims). Still other courts have attributed the heightened standard to the doctrine of waiver of a known right and have held that because such waivers must be proven by clear and convincing evidence, the same burden of proof should apply to oral modifications to a written contract. *See DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.,* 30 Cal.App.4th 54, 35 Cal.Rptr.2d 515, 518–19 (1994). As the Supreme Court of Oregon observed: "If the [standard of proof of clear and convincing evidence] has a reason, it is not some intrinsic implausibility that an agreement once made may later be changed but rather the relative probative force of a document as against controverted testimony of an alleged oral replacement." *Lichty v. Merzenich,* 278 Or. 209, 563 P.2d 690, 692 (1977). While all of these considerations are important, we believe that the higher standard of proof is appropriate in order to avoid the type of ambiguous situation that occurred in this case, in which one party thought the contract had been modified and the other did not think a modification had occurred. We further believe that requiring proof by clear and convincing evidence is an appropriate balancing of the principles of freedom of contract against the sanctity of written contracts. That standard reduces the risk that the parties' intent as set forth in the contract will not prevail. *Cf. In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (stating that reasonable-doubt standard reduces risk of criminal convictions due to factual error).

*Other Arguments on Appeal*

{13} Contractor's other arguments are easily answered. Contractor contends that

the trial court erred in admitting parol evidence to clarify the contract regarding the intended use of the areas labeled "storage room" and "unexcavated space" on the plans. We note, however, Contractor did not object to this testimony below and therefore cannot raise this argument for the first time on appeal. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496–97, 745 P.2d 717, 721–22 (Ct. App.1987) (noting that a party cannot raise new arguments on appeal); *State v. Lucero,* 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App. 1986) (reiterating that in order to preserve an issue for appeal, the appellant must have made a timely, specific objection to the evidence during the trial).

{14} Contractor makes a number of challenges to the sufficiency of the evidence to support various determinations by the trial court. On appeal, we view the evidence in the light most favorable to the decision below, resolving all conflicts in the evidence in favor of that decision and disregarding evidence to the contrary. *See Lopez v. Adams,* 116 N.M. 757, 758, 867 P.2d 427, 428 (Ct.App.1993). When a finding is made against the party having the burden of proof on the issue, we will affirm that finding if the trial court could rationally reject the evidence offered in support of that finding. *See id.* When a party is required to prove a matter by clear and convincing evidence, our review on appeal takes this heightened standard of proof into account. *See Twin Forks Ranch, Inc.,* 1998–NMCA–129, ¶¶ 8, 9, 125 N.M. 674, 964 P.2d 838. We emphasize, however, that the question on appeal is whether substantial evidence supports the trial court's findings, not whether the evidence would have supported different findings. *See Wisznia v. State Human Servs. Dep't,* 1998–NMSC–011, ¶ 10, 125 N.M. 140, 958 P.2d 98.

{15} Initially, Contractor argues that he proved that the parties modified the contract to allow changes that would increase the cost to be made without written change orders. Contractor testified that Homeowners did not always ask for a price on the change, although occasionally they did. When they did ask, Contractor would give them an approximate price. Asked why he did not execute written change orders, Contractor testified:

> Early on the relationship of the Millers and myself became very informal. We seemed to work together on this project very mutually minded. Things were very smooth. There was never a question when I presented an invoice for payment; they cut me a check and handed it to me graciously. They were very appreciative of the work I was doing and having done for them. And there was a mutual trust that evolved there. So, it was, it was a situation where if they asked for something to be done, and it was verbally agreeable, then, I assumed that there would be no complication in collecting the additional monies for having something extra done.

Homeowners, on the other hand, denied that the construction changes were made at their request. Indeed, Mr. Miller testified that Contractor made the construction changes without consultation and that Contractor never told him that these changes would increase the amount due under the contract. The trial court could properly reject Contractor's testimony and accept Mr. Miller's testimony that he was not told that the various changes would result in additional charges over and above the contract price. *See Lopez,* 116 N.M. at 758, 867 P.2d at 428.

{16} Contractor additionally argues that the trial court erred in finding that Homeowners were not equitably estopped or barred by the doctrine of laches from asserting damages which were not disclosed until immediately before trial. In support of this contention, Contractor points out that about a year after Homeowners moved into the house, he received a letter from their attorney pointing out the problems Homeowners had noticed with the house. During the litigation, Contractor argued that the letter was a find "punch list" and that Homeowners should not be allowed to claim other construction problems or defects that were not mentioned in the letter. However, Mr. Miller testified that he met with Contractor at about the same time and verbally informed Contractor of additional problems. Under these circumstances, the trial court could rationally reject Contractor's version of

events and find that Contractor was aware of these additional problems with the house almost two years before trial. *See id.; see also State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) ("The fact finder may reject defendant's version of the incident.").

{17} Contractor further argues that his testimony generally established that certain changes or additions were made. We note, however, that the issue before the trial court was not whether the changes had been made, but whether Homeowners authorized those changes in advance as additional charges not covered by the contract price. Moreover, Contractor's argument fails to take into account the conflicting evidence offered by Homeowners on these issues. For example, Contractor relies on his own testimony that a change in the manner of constructing the driveway was discussed with Mr. Miller, and Mr. Miller authorized the additional expense. However, Mr. Miller testified that the contract did not specify how the driveway was to be constructed and that he was not told that there would be an additional charge for the construction method that Contractor used. Contractor contends that after the contract was signed, Homeowners asked for a change in certain construction details of the kitchen cabinets and countertops. Contractor contends that he told· Homeowners that this change would cost extra. However, Homeowners testified that they had specified these details of construction before the contract was signed and that they were never told there would be an additional charge for these details. Contractor also contends that Homeowners specifically asked him to build a wet bar in the basement area and to put in a closet under the stairs. Contractor so testified during trial. However, it was undisputed that no written change order was executed reflecting these changes. On all of these issues, the trial court could properly reject Contractor's testimony and believe the testimony offered by Homeowners. *See Lopez,* 116 N.M. at 758, 867 P.2d at 428.

{18} Contractor also challenges the trial court's rejection of his contention that Homeowners failed to mitigate their damages by failing to repair the problems with the home prior to trial. "The legal rule of mitigation is designed to discourage persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts, or from actively increasing such loss where prudence requires that such activity cease." *Hickey v. Griggs,* 106 N.M. 27, 30, 738 P.2d 899, 902 (1987). We acknowledge that Homeowners' expert, Steve Strain, testified that the earlier the various problems were fixed, the better. However, we agree with Homeowners that, apart from this general statement, Contractor did not offer any evidence that the cost of fixing the various problems had increased due to the lapse of time. Moreover, Mr. Miller testified that after a few months Contractor refused to correct problems with the residence that had been pointed out to him. Under the circumstances, the trial court could properly have determined that Contractor was at least partially responsible for the failure to timely correct the various problems. Thus, we hold that the evidence supports the trial court's rejection of Contractor's defense.

{19} Finally, Contractor argues that the trial court erred in denying him recovery in quantum meruit for the additional costs incurred due to changes or modifications made during construction. We disagree. We recognize that even if there is no contract, recovery may be allowed under quasi-contract or quantum meruit for the reasonable value of services and materials furnished at the request of the one to be charged. *See State ex rel. Gary v. Fireman's Fund Indem. Co.,* 67 N.M. 360, 364– 65, 355 P.2d 291, 294 (1960). However, in this case the trial court found as fact that the construction changes for which Contractor sought to recover were undertaken by Contractor "unilaterally, and without prior approval from" Homeowners. As this Court has pointed out: " 'Where the defendant has a right to choose for himself whether to receive a benefit, and where restitution would deprive him of this choice by requiring payment for a "benefit" the defendant may not want, restitution is often denied.' " *Tom Growney Equip., Inc. v. Ansley,* 119 N.M. 110, 112, 888 P.2d 992, 994 (Ct.App.1994) (quoting 1 Dan B. Dobbs, *Dobbs Law of*

*Remedies* § 4.9(2), at 683 (2d ed.1993)). We think that this is such a case. The trial court determined that Homeowners did not authorize the construction changes that increased the price. Under these circumstances, it would be unfair to Homeowners to require that they pay for the cost of those changes.

*Timeliness of Cross–Appeal*

{20} Contractor argues that the notice of cross-appeal was not timely filed. The timely filing of the notice of cross-appeal is a mandatory precondition to our exercise of jurisdiction over it. *See Trujillo v. Serrano,* 117 N.M. 273, 276–78, 871 P.2d 369, 372–74 (1994). The trial court's judgment was filed on January 12, 1998. Contractor served his notice of appeal on Homeowners by mailing it on February 6, 1998. It was timely filed in district court on February 9, 1998. Homeowners filed the notice of cross-appeal on February 23, 1998. Contractor points out that Rule 12–201(A) NMRA 1999 requires the notice of cross-appeal to be filed within ten days of service of the notice of appeal. Thus, Contractor contends that since he served the notice of appeal on February 6, 1998, the notice of cross-appeal was required to be filed no later than February 16, 1998. Homeowners argue that they timely filed the notice of·cross-appeal pursuant to Rule 12–308 NMRA 1999 concerning computation of time. We agree with Homeowners.

{21} Rule 12–201(A) provides in pertinent part that "[i]f a timely notice of appeal is filed by a party, any other party may file a notice of appeal within ten (10) days after the date on which the first notice of appeal was served or within the time otherwise prescribed by this rule, whichever period last expires." Although Rule 12–201(A) explicitly excludes the three-day mailing provision from the computation of time for filing a notice of appeal, the sentence of the rule concerning notice of cross-appeal does not include such an exclusion, and in fact runs the time for filing notice of cross-appeal from the time of service, thereby triggering Rule 12–308(B). As a consequence, we look to Rule 12–308 concerning computation of time. Rule 12–308 (emphasis added) reads as follows:

A. **Computation.** In computing any period of time prescribed or allowed by these rules, by order of court or by any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, Sunday or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. *When the period of time prescribed or allowed is less than eleven (11) days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.* As used in this rule, "legal holiday" includes New Year's day, Martin Luther King, Jr.'s birthday, Memorial day, Independence day, Labor day, Columbus day, Veterans' day, Thanksgiving day, Christmas day and any other day designated as a state or judicial holiday.

B. **Additional time after service by mail.** Except as otherwise provided by these rules, whenever a party is required or permitted to do an act within a prescribed period after service of a paper upon the party and the paper is served by mail, three (3) days shall be added to the prescribed period.

{22} The emphasized portion of Rule 12–308(A) was added to the rule in 1997 apparently to bring our rules of appellate procedure into line with the rules of procedure for the district courts, which are in turn based on the Federal Rules of Civil Procedure. *See* Rule 1–006(A) NMRA 1999; Rule 5–104(A) NMRA 1999; Fed.R.Civ.P. 6(a). Therefore, cases interpreting the federal rules are persuasive authority on this issue. *See Century Bank v. Hymans,* 120 N.M. 684, 690, 905 P.2d 722, 728 (Ct.App.1995). The weight of federal authority treats the "prescribed period" as the period prescribed in the procedural rule in question, in this case Rule 12–201(A), without regard to the manner in which service was made. *See Tushner v. United States Dist. Court,* 829 F.2d 853,

854–55 (9th Cir.1987); *Mullins v. Hinkle,* 953 F.Supp. 744, 746–48 (S.D.W.Va.1997); *Vaquillas Ranch Co. v. Texaco Exploration & Prod., Inc.,* 844 F.Supp. 1156, 1158–59 (S.D.Tex.1994); *Coles Express v. New England Teamsters & Trucking Indus. Pension Fund,* 702 F.Supp. 355, 356–57 (D.Me.1988); *Nalty v. Nalty Tree Farm,* 654 F.Supp. 1315, 1316–18 (S.D.Ala.1987), *see also Epperly v. Lehmann Co.,* 161 F.R.D. 72, 74–76 (S.D.Ind. 1994) (agreeing but counting the three days for mailing first); *Harris v. City of Kansas City, Kan.,* 703 F.Supp. 1455, 1463 (D.Kan. 1988) (same). *But see THK Am., Inc. v. NSK Ltd.,* 157 F.R.D. 651, 654 (N.D.Ill.1994); *Pagan v. Bowen,* 113 F.R.D. 667, 668 (S.D.Fla.1987).

{23} The purpose of the federal amendments was to extend the response time under various rules prescribing ten-day time limits. *See Nalty,* 654 F.Supp. at 1316. Thus, aggregating the ten-day period with the three additional days allowed when service is made by mail would subvert the purpose of the amendments. *See id.* at 1317. Moreover, the three extra days given when service is made by mail is generally considered to reflect the time that it will take for the document to be delivered. *See id.* Adding the three-day period of time to the ten days would result in parties served by mail having significantly less time to respond than parties

served personally. Such a result is contrary to the general purpose of the rules. *See Tushner,* 829 F.2d at 855; *see also* 1 James Wm. Moore, *Moore's Federal Practice* § 6.05[2], at 6–32 (3d ed.1999); 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1171, at 517–19 (2d ed.1987).

{24} In this case, Contractor served his notice of appeal by mail on Friday, February 6, 1998. Thus, Homeowners' ten days in which to file their notice of cross-appeal did not end until Friday, February 20, 1998. Because they had been served by mail, on February 20, 1998, Homeowners still had an additional three days in which to file their notice of cross-appeal. Homeowners filed their notice of cross-appeal timely on Monday, February 23, 1998. We need not, and therefore do not, determine whether the three additional days allowed when service has been by mail does or does not include weekends and legal holidays.

*Merits of the Cross–Appeal*

{25} As noted above, the trial court found that Homeowners had requested certain non-construction extras. These items and the additional expense associated with each were as follows:

| | |
|---|---|
| Powder room carpet | $ 186.00 |
| Furniture C.O.D. | 297.69 |
| Accessories for Central Vac System | 45.00 |
| Custom built electric boxes | 250.00 |
| Overage—appliance allowance | 1495.00 |
| Refrigerator | 500.00 |
| Door Hardware | 660.00 |
| Overage—carpet | 1913.98 |
| Total | $5347.67 |

Homeowners contend that the undisputed testimony below indicates that they paid for these items by a check for $6240.93 sent to Contractor in June 1995.

{26} We agree that it was undisputed below that a check for that amount was sent to Contractor at that time, was received by Contractor, and was negotiated by Contractor. However, the testimony concerning the charges covered by the check was confusing. Contractor testified that he considered it a partial payment on the $12,497.88 that he

had told Homeowners they owed but he did not identify any particular items that he considered to have been paid by the check. Mr. Miller testified that the check covered the C.O.D. charges on the furniture, the amount billed for both wet bars, the amount owed for the refrigerator, the amount owed for the carpet overage, the amount owed for the vacuum accessories, the amount owed for three additional light fixtures, and an undisputed $650 still owed on the original contractor price. In short, if the trial court believed the testimony of Mr. Miller, only $2756.67 of

504

the $6240.93 check sent to Contractor in June 1995 covered items that were included in the $5347.67 that Homeowners admitted during trial was the cost of changes that they had authorized. But the trial court was not required to believe Mr. Miller's testimony. *See Sutphin,* 107 N.M. at 131, 753 P.2d at 1319. Under the circumstances of this case, the trial court could rationally reject Mr. Miller's testimony that the check in question was for any of the items that the trial court ultimately found that Homeowners had either admitted were owing or had stipulated to during trial. *See Lopez,* 116 N.M. at 758, 867 P.2d at 428.

*Conclusion*

{27} The trial court correctly required Contractor to prove oral modifications to the written contract by clear and convincing evidence. The notice of cross-appeal was timely filed. In addition, the trial court's findings are supported by substantial evidence. We affirm the judgment of the trial court.

{28} **IT IS SO ORDERED.**

PICKARD, C.J., and APODACA, J., concur.