The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>January 19, 2022</u>

**No. A-1-CA-38131**

**CENTRAL MARKET, LTD., INC.,**

     Plaintiff-Appellant,

v.

**MULTI-CONCEPT HOSPITALITY, LLC;
PETER GIANOPOLOUS a/k/a PETER
GIANOPOULOS; and SHAM NAIK,**

     Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Victor S. Lopez, District Judge**

Cadigan Law Firm, P.C.
Michael J. Cadigan
Albuquerque, NM

for Appellant

Askew & White LLC
Daniel A. White
Albuquerque, NM

for Appellees Multi-Concept Hospitality, LLC and Peter Gianopolous

Lakins Law Firm, P.C.

Charles N. Lakins
Albuquerque, NM

for Appellee Sham Naik

**OPINION**

**YOHALEM, Judge.**

{1}      This case was brought by landlord Central Market Ltd., Inc. (Central Market) to recover rent and maintenance fees it claimed were owed to it under the terms of a commercial lease agreement, "Building Standard Marketplace Lease" (the Lease), with tenant Multi-Concept Hospitality, LLC (MCH). Central Market sued MCH for breach of the Lease, and sued Sham Naik and Peter Gianopoulos (Guarantors), the owners of MCH, for breach of their personal guaranty of MCH's obligations under the Lease. Following a bench trial, the district court concluded that the amounts Central Market failed to pay MCH for work performed under the terms of the Lease exceeded the amount MCH owed in rent and maintenance fees. The district court entered judgment for MCH, awarding MCH the amount of its overpayment and awarding Guarantors attorney fees and costs as the prevailing parties.

{2}      Central Market raises fifteen issues on appeal. Approximately half of Central Market's claims on appeal are contentions that one of more of the district court's findings of fact were not supported by substantial evidence in the record. Central Market also raises the following issues of law: (1) the district court erred in offsetting amounts Central Market owed to MCH in the absence of a counterclaim for breach

of the Lease by MCH; (2) the district court erred in concluding that the guaranty's waiver of defenses and offsets was unenforceable as a matter of law and public policy; (3) the district court erred in awarding MCH damages in the absence of a notice of default and an opportunity to cure; (4) the district court misconstrued the terms of the Lease when it found that the rent had been reduced based solely on course of performance; (5) the district court misconstrued the Lease when it found that Central Market had overcharged MCH for maintenance of the community areas, even though MCH had not requested an audit of Central Market's expenses; (6) the district court abused its discretion in concluding that MCH and Guarantors were the prevailing parties, in awarding attorney fees without detailed records, in awarding Guarantors attorney fees for work not directly related to the guaranty agreement, and in awarding Naik attorney fees for mediation.

{3}    We affirm the district court with a single exception: we agree with Central Market that the district court misconstrued the terms of the Lease when it concluded that the amount of rent due could be modified solely by Central Market's acceptance of a lower amount for several months. We remand to allow the district court to reduce the amount of overpayment to MCH by the additional rent due and affirm the district court's judgment in all other respects.

**BACKGROUND**

2

**{4}** Naik and Gianopoulos started a restaurant business, forming MCH, a limited liability company. In November 2010, MCH entered into a seven-year commercial lease agreement with Central Market[1] to rent a commercial space in downtown Albuquerque, New Mexico. The Lease included, as an addendum, a personal guaranty (Guaranty Agreement) under which Gianopoulos and Naik guaranteed MCH's payment under the Lease. The Guaranty Agreement provided that Guarantors' personal liability "shall not be in any way affected by . . . any claim, defense, counterclaim or setoff which the Tenant [MCH] may have or assert."

**{5}** During the term of the Lease, a number of disputes about payment of the landlord's and the tenant's obligations under the Lease arose between the parties. After the restaurant closed and the Lease term expired, Central Market filed this lawsuit against MCH and against Gianopoulos and Naik, personally as Guarantors, alleging breach of the Lease and breach of the Guaranty Agreement. Central Market sought payment of rent and other fees it claimed MCH owed under the terms of the Lease and had not paid. MCH and the Guarantors challenged the amount of damages claimed by Central Market, and also claimed that Central Market owed MCH money under the Lease terms, which should be credited by the district court against Central Market's damages.

---

[1]Roy Gottlieb, LLC, and Chiproy, LLC also co-owned the premises and were landlords on the lease, but were not named plaintiffs in this case. The district court found that Central Market represented all owners.

{6} The district court entered extensive findings of fact and conclusions of law following a bench trial. The facts relevant to each party's claims and defenses under the Lease are detailed in the discussion below to the extent necessary to our decision. The district court resolved each of the conflicts between the parties and concluded that "[Central Market] is not entitled to recover against [MCH and Guarantors] because the amount [Central Market] owes to [MCH] for setoff exceeds the amount [MCH and Guarantors] owe to [Central Market] for damages." The district court made findings calculating the amount by which MCH had overpaid and awarded MCH a money judgment against Central Market in the total amount of $15,631.16. The district court declared MCH and Guarantors the prevailing parties for purposes of the award of attorney fees under the terms of the Lease and subsequently awarded attorney fees and costs to Guarantors.

{7} Central Market appealed from the judgment against it on the merits and separately from the award of attorney fees and costs. Central Market's appeals have been consolidated by this Court for decision.

**DISCUSSION**

**I. Central Market's Substantial Evidence Argument Lacks Merit**

{8} We begin by addressing Central Market's challenges to the district court's findings of fact as unsupported by substantial evidence in the record. We reject all of Central Market's challenges and accept the district court's findings.

4

{9} We note first that Central Market failed to include in its statement of proceedings a single citation to the trial transcript. More importantly, both in its statement of proceedings and in its argument, Central Market describes only the evidence that supports its claims, while failing to bring to our attention and provide citation to the evidence supporting the district court's findings. Several times in its brief, for example, Central Market alleges that "[t]here was no substantial evidence" adduced at trial, when, in fact, our review shows direct support in the record for the district court's finding. The testimony of a single witness, if found credible by the district court, is sufficient to support a finding, and, under the rules of this Court governing briefing, such supporting testimony must be brought to our attention. *See* Rule 12-318(A)(3) NMRA; *State v. Hamilton*, 2000-NMCA-063, ¶ 20, 129 N.M. 321, 6 P.3d 1043.

{10} Defendant Naik argues that these omissions from the brief in chief merit refusal by this Court to disturb the district court's findings of fact on appeal. We agree. *See* Rule 12-318(A)(3) (providing that a contention that a finding of fact is not supported by the substantial evidence "shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing on the proposition"); *see also Mountain States Tel. & Tel. Co. v. Suburban Tel. Co.* 1963-NMSC-120, ¶ 7, 72 N.M. 411, 384 P.2d 684 (holding that we do not disturb the trial court's findings when the appellant's brief points to contrary evidence but neglects

to point out supporting evidence). We therefore accept the district court's findings of fact and proceed to consider Central Market's remaining arguments.

## II. The District Court Did Not Err in Crediting Unpaid Amounts Owed by Central Market to MCH Under the Lease

{11} Central Market argues that the district court erred in offsetting amounts owed to MCH under the Lease for tenant improvements against the amount Central Market proved remained unpaid in rent. Central Market argues that "setoff" is either an affirmative defense or a counterclaim, which must be specifically pleaded in the answer to the complaint or in the pretrial order. We understand Central Market to claim that the pretrial order was not sufficiently "specific" to put it on notice of MCH's claim for setoff for uncompensated improvements made to the premises by the tenants. Central Market claims that it was prejudiced in the preparation of its case by MCH's failure to specifically plead setoff.

{12} This issue arose in the district court when Central Market, near the end of the second (and last) day of trial, objected for the first time to testimony introduced earlier in the trial supporting MCH's claim that it had never been paid the full amount of a promised $30,000 reimbursement by Central Market for "tenant improvements" required by the Lease. The shortfall claimed by MCH was $22,500.

{13} Central Market objected to testimony on this issue on the basis that MCH was seeking a setoff for tenant improvements; setoff was an affirmative defense; and

6

affirmative defenses not pleaded with specificity in the answer to the complaint or in the pretrial order are barred. The district court rejected Central Market's claim that the word "setoff" must specifically be used, or the label "affirmative defense" or "counterclaim" specifically affixed, and found that the contentions in the pretrial order adequately put Central Market on notice of MCH's claim for credits or setoff based on tenant improvements.

{14} We assume, without deciding, that a claim for a setoff under the circumstances of this case is an affirmative defense or a counterclaim, as Central Market contends.[2] We note that because Rule 1-008(C) NMRA allows the district court to treat an affirmative defense as a counterclaim, or a counterclaim as an affirmative defense, we need not distinguish between the two kinds of claims.

{15} Even where a claim is an affirmative defense or a counterclaim, the district court's rules of civil procedure are not rigidly applied to bar a claim based on a technical error in the pleadings. *See* Rule 1-008(E)(1) ("No technical forms of pleading . . . are required."). "The theory of pleadings is to give the parties fair notice of the claims and defenses against them, and the grounds on which they are based."

---

[2]In *Washington v. Atchison, Topeka & Santa Fe Ry. Co.*, 1992-NMCA-066, ¶¶ 12-13, 114 N.M. 56, 834 P.2d 433, this Court held that a claim for setoff based on amounts paid to the plaintiff during the pendency of a lawsuit was not an affirmative defense and was not required to be pleaded in the original action. Because we conclude that setoff was adequately pleaded in the pretrial order, assuming it was an affirmative defense or counterclaim, we do not decide whether the setoff in this case was an affirmative defense or counterclaim.

*Schmitz v. Smentowski*, 1990-NMSC-002, ¶ 9, 109 N.M. 386, 785 P.2d 726. Contrary to Central Market's contention that an affirmative defense or counterclaim must be specifically labelled as such, "notice pleading does not require that every theory be denominated in the pleadings—general allegations of conduct are sufficient, as long as they show that the party is entitled to relief and . . . [are sufficient so that] the parties and the court will have a fair idea of the action about which the party is complaining." *Id.*

{16}    Consistent with this approach to pleading, which focuses on whether the objecting party was prejudiced by a failure to receive earlier notice of a claim, *id.* ¶ 14, our rules of procedure allow omissions in the pleadings to be cured by inclusion of a new contention, affirmative defense, or counterclaim in the pretrial order, *see* Rule 1-016 NMRA, or by amendment of the pleadings to conform to the evidence at trial, Rule 1-015(B) NMRA. So long as the inclusion of a contention in the pretrial order or the litigation of the issue at trial is with the consent or implied consent of the opposing party, *Fahrbach v. Diamond Shamrock, Inc.*, 1996-NMSC-063, ¶ 24, 122 N.M. 543, 928 P.2d 269, the pleadings will be deemed amended, Rule 1-015(B). Finally, "[e]ven if the [opposing] party has not consented to amendment, a trial court is required to allow it freely if the objecting party fails to show he will be prejudiced thereby." *Schmitz*, 1990-NMSC-002, ¶ 14.

8

{17} The pretrial order entered by the district court in this case, without objection by Central Market, and without any subsequent request for modification of the order, includes the following claim in MCH's list of contentions: "There are unpaid tenant improvements, which should be credited to [MCH and Guarantors]." In its list of contested issues of fact, the pretrial order includes the following issue: "Whether Plaintiff [Central Market] compensated Defendants [MCH and Guarantors] for the improvements that were completed." The contested issues of law include "those implicit in the foregoing issues of fact." Central Market did not object to the pretrial order and never sought its amendment. As our Supreme Court noted in *Fahrbach*, "[t]he principle is well established that a pretrial order, made and entered without objection, and to which no motion to modify has been made, controls the subsequent course of action." 1996-NMSC-063, ¶ 24 (internal quotation marks and citation omitted).

{18} The district court found, and we agree, that the pretrial order, under the circumstances of this case, was adequate to put Central Market on notice of MCH's affirmative defense or counterclaim of setoff of money owed MCH under the Lease for tenant improvements. Although Central Market claims both undue surprise and undue prejudice from the failure of MCH to plead setoff as an affirmative defense or counterclaim in its answer, asserting that it "was denied the opportunity to prepare to defend," Central Market offers no explanation of how the preparation of its

9

defense was impacted and describes no additional evidence it could have offered if it had earlier notice of the setoff claim. *See Schmitz*, 1990-NMSC-002, ¶ 17 ("The test of prejudice is whether the party had a fair opportunity to defend and whether it could offer additional evidence on the new theory.").

{19} We see no evidence of prejudice in our review of the record. Although setoff was not pleaded in MCH's answer to the complaint, it was specifically pleaded in Naik's answer, thereby putting Central Market on notice of the claim from the outset of the proceedings. In its opening remarks at trial, Central Market acknowledged that the dispute about payment for improvements made by MCH had been ongoing throughout the term of the Lease. Central Market also acknowledged at trial that the parties had met before trial in an attempt to resolve MCH's claim that it was owed money for tenant improvements. The trial record thus establishes that Central Market was aware of MCH's claim for setoff and was prepared to defend against MCH's allegation that Central Market had underpaid them for tenant improvements. *See Charley v. Rico Motor Co.*, 1971-NMCA-004, ¶¶ 18-19, 82 N.M. 290, 480 P.2d 404 (holding that even though the defendant's claim of setoff was not pleaded as a counterclaim, the district court did not error in crediting the amount of a repair bill, where there was a debt, the plaintiff was aware there was an issue about payment of the bill, and the matter was fully litigated).

{20} For these reasons, we agree with the district court that MCH's answer was amended by the pretrial order to include the affirmative defense or counterclaim of setoff.

**III.   The District Court Did Not Err in Refusing to Enforce the Guaranty Agreement's Waiver of the Defense of Satisfaction of the Debt as Contrary to Public Policy**

{21} Central Market next claims that the district court erred as a matter of law in concluding that the Guaranty Agreement's waiver "of any . . . defense . . . or setoff which the Tenant may have or assert" violates public policy. Central Market sought to apply the waiver provision to preclude Guarantors from relying on the defense that the principal had satisfied, in whole or in part, its debt under the Lease. We agree with the district court that a waiver provision that makes a guarantor liable despite proof of full or partial payment by the principal is contrary to New Mexico law and against public policy.

{22} "New Mexico . . . has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law [or some principle of justice] or rule of public morals." *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 1989-NMSC-030, ¶ 14, 108 N.M. 467, 775 P.2d 233. A contractual provision may be deemed void as contrary to New Mexico law and public policy only when the offending contractual provision is "clearly contrary to what the [L]egislature or judicial decision has declared to be the public policy[.]"

11

*First Baptist Church of Roswell v. Yates Petroleum Corp.*, 2015-NMSC-004, ¶ 12, 345 P.3d 310 (internal quotation marks and citation omitted). We review public policy determinations de novo. *Montaño v. Frezza*, 2017-NMSC-015, ¶ 15, 393 P.3d 700.

{23}     MCH argues that the Guaranty Agreement's waiver provision, as applied by Central Market, contravenes the "fundamental tenet of the law of contract remedies that, regardless of the character of the breach, an injured party should not be put in a better position than had the contract been performed." *Unified Contractor, Inc. v. Albuquerque Hous. Auth.*, 2017-NMCA-060, ¶ 59, 400 P.3d 290 (internal quotation marks and citation omitted). We agree that requiring Guarantors to compensate Central Market a second time when the district court found Central Market had been fully compensated under the terms of the Lease would violate New Mexico's public policy against windfall damages in breach of contract actions. *See Eker Bros. Inc. v. Rehders*, 2011-NMCA-092, ¶ 18, 150 N.M. 542, 263 P.3d 319.

{24}     Allowing Central Market to collect from Guarantors on a debt that the district court found had been satisfied would also run afoul of New Mexico policy treating a guarantor as "a favorite of the law," entitled to have his or her obligations narrowly construed to protect the guarantor's interests. *See Levenson v. Haynes*, 1997-NMCA-020, ¶ 19, 123 N.M. 106, 934 P.2d 300 (noting that "a guarantor . . . is a favorite of the law, . . . entitled to a strict construction of his [or her] agreement, and

12

his [or her] liability is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent" (internal quotation marks and citation omitted)). A "guarantor" is by definition a "secondary obligor," who is liable to the obligee "for the underlying obligation in the event of a default by the principal obligor (or principal debtor)." *Randles v. Hanson*, 2011-NMCA-059, ¶ 15, 150 N.M. 362, 258 P.3d 1154. A guarantor is entitled to defend by showing that the primary debt has been satisfied. Requiring the guarantor to pay an already-satisfied debt would be inconsistent with the protection the law affords a guarantor. *See Sunwest Bank of Clovis, N.A. v. Garrett*, 1992-NMSC-002, ¶ 11, 113 N.M. 112, 823 P.2d 912 (recognizing that a guarantor is not liable if the existence of the underlying corporate debt is refuted).

{25}    We therefore agree with the district court that the Guaranty Agreement's waiver provision as sought to be applied by Central Market was unenforceable as a matter of New Mexico law and policy.

**IV.    MCH Was Not Required by the Lease Terms to Provide Written Notice of Default**

{26}    We next address Central Market's contention that MCH's failure to give written notice of default to Central Market and an opportunity to cure barred it from recovery of damages. This presents a question of contract interpretation, which we

13

review de novo. *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803.

{27}    The Lease provides, in relevant part, that prior to bringing any "action for damages" against the Landlord, "Tenant will give Landlord written notice specifying such default with particularity, and Landlord shall thereupon have thirty days in which to cure any such default." Central Market argues that because MCH provided no written notice of default to Central Market, MCH should be barred from recovery of any amounts owed by Central Market. We do not agree.

{28}    The intent of the notice provision, by its plain terms, is to require notice in advance of the filing of "an action for damages" by a tenant, thereby giving the landlord thirty days to cure the default and avoid legal action. *See Martinez v. Martinez*, 1984-NMSC-028, ¶ 14, 101 N.M. 88, 678 P.2d 1163 (construing similar language to require the giving of notice and a reasonable time before legal action is taken, and finding ineffective any notice given by the plaintiff after the action is filed). This provision is simply not relevant to this action, which Central Market, the landlord rather than the tenant, initiated at a time of its choosing.

## V.    The District Court Erred in Finding That MCH's Rent Was Reduced Based on the Course of Performance

{29}    We next address Central Market's contention that the district court erred in finding that Central Market had consented through the course of performance to a

14

reduction of base rent payable under the Lease from $4,177.23 to $4,000 per month. The facts underlying this issue are not in dispute. Central Market challenges the district court's application of the law to these undisputed facts. Our review, therefore, is de novo. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 28, 137 N.M. 26, 106 P.3d 1273 (providing that "[w]hen a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts" (internal quotation marks and citation omitted)).

{30} The uncontroverted evidence establishes that beginning February 2016, the base rent set by the Lease was $4,177.23 per month. MCH paid only $4,000 each month. During the relevant time, Central Market consistently sent MCH monthly invoices for $4,177.23, which noted "past due" charges. Gianopoulos testified that in spite of those invoices, he believed that $4,000 per month was appropriate because of an "ongoing negotiation."

{31} The Lease provides that modification of any term requires an agreement "in writing and duly signed by the party against whom enforcement of such change, modification or termination is sought." Gianopoulos admitted that no such signed writing existed. Although the district court, in its findings of fact, states that Central Market "assented in writing to the rent reduction" based on a demand by Central Market to replace a $4,000 check that did not clear with another $4,000 check, neither the court, in its conclusions of law, nor the parties on appeal, claim that this

15

writing satisfied the lease term. The district court concluded that "Landlords' damages are limited by the course of performance from receiving more than $4,000[] per month in rent" from February 2016 forward (until January 2018, when rent was cut off by the district court for failure to mitigate damages). We do not agree.

{32}     Where the express terms of the contract require a signed writing to modify a contract term, the acceptance of a lower amount, when that acceptance comes with notice that a higher amount remains due, is not sufficient to modify the contract. Although a written contract providing that it must be modified in writing can be modified orally under New Mexico law, such modification must be proved by clear and convincing evidence. *Powers v. Miller*, 1999-NMCA-080, ¶ 11, 127 N.M. 496, 984 P.2d 177. The evidence in the record here does not include either a clear statement, oral or written, or clear conduct, indicating an intent by Central Market to modify the rent.

{33}     MCH argues, in the alternative, that this Court should find waiver by estoppel based on Central Market's acceptance of the lower rent. As support, they point to (1) Central Market's consistent acceptance of the $4,000 payments without mention of the possibility of default until 2017; and (2) Central Market's request for a replacement check in the amount of $4,000 (as opposed to $4,177.23) when, in February 2017, one of MCH's $4,000 checks was rejected by the bank for insufficient funds.

{34}     MCH's argument fails because, to establish waiver by estoppel, the nonwaiving party must show that it was misled *to its prejudice* by the conduct of the waiving party. *See J.R. Hale Contracting Co. v. United N.M. Bank*, 1990-NMSC-089, ¶ 12, 110 N.M. 712, 799 P.2d 581. Even assuming MCH reasonably believed that a waiver of rent was intended by Central Market, MCH introduced no evidence of any change of position to its detriment based on its belief that Central Market had lowered the rent to $4,000. *See id.* ¶ 13 (requiring a showing of reliance on the conduct and a change in the position to the party's detriment to establish waiver by estoppel). In fact, MCH benefitted by being allowed to pay less in monthly rent than the Lease provided, without being evicted from the premises.

{35}     The district court accordingly erred in concluding that the rent had been reduced to $4,000 per month from February 2016 through December 2017.

**VI.   The District Court Did Not Err in Placing the Burden on Central Market to Prove the Amount Owed by MCH for Common Area Maintenance**

{36}     Central Market next argues that the district court erred in failing to award it damages relating to what it claims were unpaid Common Area Maintenance (CAM) charges. The Lease provides that, during the lease term, MCH would pay a monthly CAM charge, in addition to rent. The Lease caps the charge at 5 percent of the minimum base rent set by the Lease. Charges for water and sewage were to be included in the CAM charge, according to the Lease. Central Market, however,

17

imposed additional water and sewage charges on top of and separate from the CAM charge. Under the Lease, Central Market was permitted to charge for insurance and real estate taxes separately from the CAM charge, but did not do so, and instead commingled these charges with the CAM charges. The CAM amount charged far exceeded the 5 percent maximum.

{37}     Central Market contends on appeal that the Lease required MCH to request an audit of operating costs as a precondition to claiming in the district court that the CAM charges sought by Central Market exceeded the 5 percent maximum set by the Lease. Central Market argues that by not requesting an audit during the term of the Lease, MCH waived its right to object to the CAM charges at trial.

{38}     We see no basis in the Lease to require a tenant to request an audit when the tenant defends an action for breach of lease by claiming that the amount sought, on its face, exceeds the 5 percent maximum set by the terms of the Lease. The district court properly placed the burden on Central Market to establish with evidence that the amounts charged conformed with the Lease terms and that legitimate charges remained unpaid. A plaintiff claiming breach of contract has the burden of proving the existence of the contract, breach of the contract, causation, and damages. *Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, ¶ 18, 119 N.M. 436, 891 P.2d 1190, *overruled on other grounds by Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop, Inc.*, 2013-NMSC-017, ¶ 16, 301 P.3d 387. Because Central Market failed to

carry its burden of establishing its entitlement to charges far exceeding the CAM maximum set by the Lease, or its burden of establishing the amount of its damages, the district court applied the 5 percent maximum set by the Lease.

{39} The district court's calculation of damages was consistent with the unambiguous term of the Lease and with the law placing the burden of proof at trial on the party claiming breach. *See id.* The district court's conclusion that Central Market failed to carry its burden of proof to justify a charge higher than 5 percent of the base rent was not error.

## VII. The District Court Acted Within Its Discretion Both in Determining That Gianopoulos and Naik Were Prevailing Parties and in Its Award of Attorney Fees

{40} We next address Central Market's claims of error relating to the award of attorney fees and costs. Central Market raises the following arguments: (1) the parties prevailed in equal measure, and, therefore, the district court abused its discretion in designating MCH and Guarantors "prevailing parties"; (2) Gianopoulos's admission that he breached his pretrial settlement agreement made Central Market per se the prevailing party on that issue; (3) the district court erred in awarding attorney fees based on motions that were unsupported by detailed time records; (4) the district court erred by awarding Guarantors attorney fees that were not substantially related to Guaranty Agreement; and (5) Naik was not entitled to recover costs relating to mediation, because mediation is not listed by Rule 1-054(D)

19

NMRA as a specifically recoverable cost and the district court did not find that Central Market acted in bad faith in the mediation. We review a trial court's award of attorney fees and costs for abuse of discretion. *NM. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 6, 127 N.M. 654, 986 P.2d 450; *Mascarenas v. Jaramillo*, 1991-NMSC-014, ¶ 24, 111 N.M. 410, 806 P.2d 59. We address each of Central Market's arguments in turn.

{41} First, we address Central Market's challenge to the district court's conclusion that MCH is the prevailing party. Our case law provides that a party in whose favor final judgment is rendered is the prevailing party. *In re Adoption of Stailey*, 1994-NMCA-015, ¶ 12, 117 N.M. 199, 870 P.2d 161. In this case, final judgment was rendered in favor of MCH and Guarantors. Although Central Market prevailed on some issues, those issues were substantially outweighed by the issues on which MCH and Guarantors prevailed, in terms of the number and importance of the issues, and in terms of the amount awarded.[3] Indeed, Central Market would have been better off if it had not filed this lawsuit. We, therefore, see no basis for holding that neither side prevailed, or that both sides prevailed in equal measure. *See Hedicke v. Gunville*, 2003-NMCA-032, ¶¶ 28-30, 133 N.M. 335, 62 P.3d 1217 (holding that a district

---

[3]Our ruling that MCH owes the difference between the $4,000 paid in rent and the $4,177.23 owed from February 2016 through December 2017, does not reduce MCH's award of damages enough to affect MCH and the Guarantors' status as the prevailing parties.

court has an obligation to determine attorney fees "according to, the facts and circumstances of the case and the extent to which the parties, in fact, prevailed[,]" and abuses its discretion in concluding neither party prevailed unless there was a one-for-one balance). Accordingly, the district court acted within its discretion in assigning "prevailing party" status to MCH and Guarantors.

{42} Second, Central Market argues that Gianopoulos admitted to breaching the settlement agreement he entered into with Central Market during the pendency of this case and that this admission entitles Central Market to "prevailing party" status. We do not agree. The district court correctly concluded that Central Market had breached the settlement agreement first, and, on this basis, relieved Gianopoulos of the obligation to pay an additional $10,000 owed to Central Market. Given this result, the district court acted within its discretion in concluding that Gianopoulos was the prevailing party on this issue.

{43} Third, we address Central Market's argument that the district court erred by granting attorney fees based on motions for fees filed without detailed billing records. While the record shows that the attorney fees motions were initially unaccompanied by billing records, Central Market admits that detailed billing records were ultimately submitted for review to both Central Market and the district court. Central Market was given, and took advantage of, the opportunity to file a supplemental response to the billing records after this review. We find no abuse of

21

discretion in the district court's consideration of the subsequently filed billing statements and Central Market's supplemental responses to determine the fees amount.

{44} Fourth, we address Central Market's contention that the district court awarded fees to Guarantors that did not substantially relate to the Guaranty Agreement. The district court found that, under the circumstances of this case, the defense of MCH was necessary to disprove the liability of Guarantors. We agree. Satisfaction of the debt by the principal is a defense to an attempt to collect on a guaranty. *See Sunwest Bank of Clovis, N.A.*, 1992-NMSC-002, ¶ 11 (recognizing that a guarantor is not liable if the existence of the underlying corporate debt is refuted).

{45} Fifth and finally, we address the argument that the district court erred in awarding Naik his mediation fee. Mediation fees are not among the list of "generally recoverable costs" provided in Rule 1-054(D), nor are they among the list of costs generally *not* recoverable under that rule. They, therefore, fall within the "necessary and reasonable costs incident to [a party's] prosecution or defense of an action" that the district court can award in the exercise of its discretion. *Dunleavy v. Miller*, 1993-NMSC-059, ¶ 39, 116 N.M. 353, 862 P.2d 1212. Our district courts are directed to "exercise their discretion sparingly," and to "explain the circumstances justifying the award." *Bernier v. Bernier ex rel. Bernier*, 2013-NMCA-074, ¶ 41, 305 P.3d 978 (internal quotation marks and citation omitted).

22

{46}     In this case, contrary to Central Market's claim, the district court found that Central Market had failed to act in good faith and had not dealt fairly with MCH and Naik in connection with the request to release Naik's guaranty and had breached the mediation agreement it entered with Gianopoulos by failing to promptly dismiss the claims against him. We find this sufficient explanation for the award of Naik's mediation fee.

**CONCLUSION**

{47}     As described above, we affirm with respect to all but one of Central Market's assignments of error. We reverse, solely with respect to the district court's failure to credit Central Market with the full amount of base rent due under the Lease from February 2016 through December 2017 (Central Market rented the premises to another tenant beginning in January 2018). We remand to the district court to amend the final judgment to account for the additional $177.23 per month due during the stated time period, consistent with this opinion.

{48}     **IT IS SO ORDERED.**


_____

**JANE B. YOHALEM, Judge**


**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**GERALD E. BACA, Judge**